In re Brenda Lee TURNER, Debtor.

**MIAMI EMPLOYEES FEDERAL CREDIT UNION, Plaintiff,**

v.

**Brenda Lee TURNER, Defendant.**

Bankruptcy No. 1–86–01909.

Adv. No. 1–86–0171.

United States Bankruptcy Court, S.D. Ohio, W.D.

Feb. 17, 1987.

Roger D. Staton, Cincinnati, Ohio, for plaintiff.

Bert C. Imfeld, Hamilton, Ohio, for defendant.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

This is an adversary proceeding in which plaintiff has filed a complaint alleging that the debt of defendant/debtor to it should be held nondischargeable on grounds appearing in the statute at 11 U.S.C. § 523(a)(2)(B), use of a false statement in writing, and also § 523(a)(6), willful and malicious injury to another entity or the property of another entity. The complaint says that the sum at issue is $1,401.32. The complaint seeks attorney's fees and interest. The answer filed by defendant is in effect a general denial, except that defendant expressly denies that no part of the debt owed to plaintiff has been repaid by defendant.

We remark that in this case a pretrial conference was held, at which time the subject of settlement was discussed without result. We will have occasion further to comment about the events at the pretrial conference later in this decision.

The matter came on for trial. At that time, plaintiff was obliged to make out a case dictated by the statute thus:

§ 523. Exceptions to discharge

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

\* \* \* \* \* \*

(8) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

\* \* \* \* \* \*

Moreover, plaintiff had to prove its case by clear and convincing evidence. *In re Martin,* 761 F.2d 1163 (6th Cir.1985).

The following facts emerged at the trial. Defendant was employed at Miami University in Oxford, Ohio, as a cook. The plaintiff is a credit union associated with Miami University. On February 25, 1986, defendant applied for a loan in the amount of "$1,500.00, plus balance". The "balance" was $412.38 from a prior loan that defendant had had with plaintiff.

Plaintiff proved, and we find as a fact, that defendant did not list all of her creditors in her loan application. This is all that is required to make out the first two statutory elements of a prima facie case under § 523(a)(2)(B). In this case, debtor offered an explanation for the failure to list all of her creditors, and it is well to direct our attention to that explanation at this point. The reason for doing so is that that evidence is bound up with the evidence upon which plaintiff relies to show an intent to deceive. That is, plaintiff offered evidence that defendant wrote checks for payments to creditors she failed to list in her loan application, and plaintiff contends that we should infer from this that she omitted

such creditors from her loan application, knowing that if she listed them, the loan would be denied.

Defendant offered evidence to counter the foregoing. It was defendant's testimony that the debts which she failed to list were debts of her husband's which she co-signed, or debts which were joint debts with her husband, but on which he was making payments.

Defendant testified that it was the practice between herself and her husband during their married life for her to write checks in payment of obligations which they both understood to be his. She testified that her husband would give her money which he deposited in her checking account, and this provided the funding for the checks which she wrote. This testimony was supported by that of her husband from whom she is now divorced.

Defendant testified that the first time she went to plaintiff in order to make application for a loan, which was in early May, 1982, she asked the person with whom she dealt if she had to write down on the application her husband's bills, or just the ones she was paying. She was told that it was not necessary to list her husband's bills. In addition, it was the testimony of defendant that she was unaware that "co-maker" was synonymous with "co-signer". This testimony is relevant because there is a question on the loan application as to whether defendant was a "co-maker" on any loans other than those listed, and she answered "no" to this question.

It was the testimony of the plaintiff's assistant manager, Clementine Kasnic, that she told defendant to fill out everything in the application. She denies that she told defendant that she need not put in debts on which she was a co-signer.

We find the testimony of defendant credible. We do not think that she could have made payments out of her checking account just taken from her pay in view of the magnitude of the checks which she wrote. Debtor's checks to creditors in the record for February, 1986 exceed $1,000.00 in amount, while debtor's gross pay at that time was $1,166.00 per month. This reinforces our acceptance of the testimony of debtor and her husband, that he gave her money to place in her account so that she could write checks on joint debts. Furthermore, we find it credible that defendant did not list co-makers in her loan application because she believed that plaintiff's representative had told her that she did not need to. That is, it was the debts of her husband on which she was a co-signer that defendant had in mind when she asked Kasnic if she need not list her husband's debts. Kasnic responded in the negative to that query. This does not mean that we do not believe the testimony of Kasnic. She simply did not have in her mind that defendant was asking about the husband's debts on which defendant was a co-signer. Rather must she have assumed that there were separate and distinct debts of the husband.

Also relevant on the question of intent are the following facts. The February 25, 1986 loan, the loan here in question, was the sixth loan that defendant had sought from plaintiff, and been granted, the first having been applied for on May 18, 1982. Repayment had regularly been made to plaintiff by defendant on her loans from the beginning until she defaulted on the present loan. She filed for bankruptcy relief June 6, 1986. Between the time that she obtained the latest loan in February, 1986 and the time that she filed her bankruptcy case, her marriage broke up and she was left to her own devices with her two children.

■ We conclude from all the foregoing that there was no intent on the part of defendant to deceive plaintiff by her failure to list those debts of her husband which were joint debts, or debts on which she was a co-maker. This conclusion disposes not only of one of the requisite elements of a cause of action under § 523(a)(2), intent to deceive, but also in its entirety of a claim under § 523(a)(6). A fortiori, there cannot be a willful and malicious act if there is no intent to deceive.

■ Another element which must be proved in order to make out a prima facie case pursuant to § 523(a)(2)(B) is that of reasonable reliance by the creditor upon the false statement. Kasnic testified that the practice of plaintiff in the course of securing a loan by a member of the credit union was for herself or one of the others in the office to secure an application from the applicant. Following completion of the application, she would check at least one listed creditor to see if that creditor was getting paid. Kasnic would then forward the application to the loan committee. She testified that neither she nor the other two employees in the office had anything to do with granting loans. She testified that certain loan standards were in effect at the credit union, and an employee who had been an employee of Miami University for more than five years could get a loan for up to $2,500.00, and lesser amounts could be obtained for lesser periods of employment. She testified that a loan officer could approve a loan up to $1,500.00 without the loan going to the loan committee.

There was testimony by Juanita C. King, administrative assistant to a dean at Miami University. She testified that the plaintiff organization had been formed in 1968. She has been on the loan committee and the board of directors and is currently a loan officer. There are nine people on the loan committee. She has personally served as a loan officer. While there are guidelines for loan officers to apply, she was unable to say that all apply them uniformly. Furthermore, she was not the loan officer who granted the loan here in question to defendant. We understand from her testimony that a certain amount of discretion is vested in each of the individuals who, from time to time, has the responsibility for approving loans, and the fact that defendant had never missed a payment in the course of six loans extending over four years, might enter into the exercise of that discretion.

Plaintiff requested a continuance of the trial after introducing the testimony of King, when it appeared that another loan officer was actually the one who had approved defendant's loan here in question. Defendant objected to the continuance, and we sustained the objection. The name of the absent loan officer was Adelman. His identity was totally within the control of plaintiff, and there can have been no surprise as to who he was, and the necessity of his evidence at the trial. We concluded that it would be an unwarranted burden on defendant to require that she take additional time off from work and appear once again in court with her attorney further to deal with this matter.

We conclude that plaintiff failed to prove that plaintiff had reasonably relied upon the false statement of defendant.

The foregoing constitutes our findings of fact and conclusions of law in this matter.

One further matter requires attention. In this case, on January 6, 1987, counsel for plaintiff filed Motion and Affidavit of Bias and Prejudice. That filing was based on events at the aforementioned pretrial conference. The trial in this matter at that time was set for January 14, 1987. On January 13, 1987, we entered Decision and Order Re Motion and Affidavit of Bias and Prejudice, denying the motion. The matter then came on for trial on January 14, 1987. At that time, we assured counsel for plaintiff that he would not prejudice his right to appeal from our decision of January 13, 1987, by proceeding with the trial. In order to effectuate that commitment, we now vacate the order entered January 13, 1987, denying plaintiff's motion asserting bias and prejudice. We incorporate herein by reference the decision upon which that order was based. The judgment being entered upon the present decision will be understood to include final disposition of our bias and prejudice decision.