In re Richard Adams **GAEBLER.**

Gary Francis **BLACKMAN**

v.

Richard Adams **GAEBLER.**

Civ. A. No. 88–2738.
Bankruptcy No. 87–0895–S.

United States District Court,
E.D. Pennsylvania.

July 15, 1988.

Irving L. Abramson, Bala Cynwyd, Pa., for plaintiff.

Stuart A. Eisenberg, Philadelphia, Pa., for debtor-defendant.

Christopher G. Kuhn, Philadelphia, Pa., for trustee.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On January 11, 1983, while in Colorado Springs, Colorado, debtor-appellee Richard Adams Gaebler ("debtor") fired his gun at and shot creditor-appellant Gary Francis Blackman ("creditor") five times. Debtor was arrested and charged with one count of attempted murder in the second degree in violation of Colorado Revised Statute ("C.R.S.") Sections 18–2–101 and 18–3–103, and two counts of assault in the first degree in violation of C.R.S. Section 18–3–202. Debtor, who was represented by

counsel throughout the criminal proceedings, pled guilty to the charges. Debtor never raised the issues of self-defense or diminished mental capacity. In the colloquy in which he entered his plea, the debtor stated that the shooting was "knowing". On October 21, 1983, the debtor was sentenced to prison at the correctional facilities at Canon City, Colorado, for a term of eight years on all counts. On December 28, 1984, debtor was placed on probation for a period of five years.

During debtor's incarceration, creditor filed a civil suit against debtor in the Colorado state courts seeking to recover damages for injuries sustained as a result of the shooting. The debtor was represented by counsel throughout the entire civil proceeding. Prior to trial in the civil matter, the court granted the creditor's motion for summary judgment on the theory of simple negligence. The creditor waived his claim for intentional or willful and wanton misconduct and for punitive damages. Thereafter, a trial on the issue of damages only took place. On March 7, 1984, the trial judge entered an Order of Judgment awarding creditor a total of $109,897.05.

On June 4, 1987, debtor filed the underlying Chapter 7 bankruptcy case. Subsequently, on September 11, 1987, the debtor moved to avoid alleged liens arising from creditor's civil judgment against him in Colorado. On October 16, 1987, creditor filed an adversary complaint challenging the debtor's right to discharge his debts on the basis of 11 U.S.C. Sections 523(a)(2)(A), 523(a)(6), and 727(a)(5). Debtor filed an Answer and Counterclaim seeking reimbursement for attorney's fees, damages for time lost from employment, and punitive damages. Debtor subsequently withdrew his motion of lien avoidance.

A trial on creditor's adversary complaint was conducted on January 14, 1988 before the Honorable David Scholl of the United States Bankruptcy Court for the Eastern District of Pennsylvania, Creditor did not pursue his cause of action under 11 U.S.C. Section 523(a)(2)(A). Moreover, due to the lack of evidence adduced at trial, Judge Scholl dismissed the 11 U.S.C. Section

**64**

727(a)(5) cause of action. Following the submission of briefs by the parties, the Bankruptcy Court, on February 22, 1988, entered judgment on the Complaint in favor of debtor and held that debtor's obligation to creditor was dischargeable. Specifically, the Bankruptcy Court concluded that because the creditor failed to prove that debtor's civil judgment debt was "for willful and malicious injury by the debtor to another entity or to the property of another entity," the debt did not fall within the statutory exception to dischargeability. 11 U.S.C. Section 523(a)(6). In addition, the Bankruptcy Court entered judgment on debtor's counterclaim in favor of creditor. Presently pending before this Court is creditor's appeal of the February 20, 1988 Order holding that debtor's obligation to creditor is dischargeable.

Creditor has raised the following issues on appeal: (1) whether the Bankruptcy Court erred in holding that to prevail in a complaint challenging dischargeability on the basis of 11 U.S.C. Section 523(a)(6), the creditor must prove that the debtor acted with the specific intent of harming the creditor; (2) whether the Bankruptcy Court erred in holding that the proceeding could not be resolved on the basis of res judicata or collateral estoppel arising out of the state of Colorado criminal proceedings; and (3) whether the Bankruptcy Court erred in accepting and affording undue weight to debtor's testimony concerning his alleged mental illness both at the time of the shooting and at trial. Jurisdiction of this Court is based upon 28 U.S.C. Section 158(a).

## I.

In reviewing decisions of the Bankruptcy Court, we evaluate findings of fact under the clearly erroneous standard. *In re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983). Such findings of fact will not be disturbed unless we are left with a definite and firm conviction that a mistake has been made by the Bankruptcy Court. *Brager v. Blum*, 49 B.R. 626 (E.D.Pa.1985); *In re Philadelphia Consumer Discount Co.*, 37 B.R. 946 (E.D.Pa.1984). Moreover, we must give due regard to the Bankruptcy Court's opportunity to judge the credibility of witnesses. *In re Neshaminy Office Building Associates*, 62 B.R. 798 (E.D.Pa.1986). The clearly erroneous standard, however, does not apply to the Bankruptcy Court's conclusions of law which we must review de novo. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir.1986); *Universal Minerals v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981).

## II.

Creditor's first ground for appeal concerns the Bankruptcy Court's conclusion of law that the creditor "was obligated to prove, by a preponderance of the evidence, that (1) the shooting was an intentional or deliberate act; and (2) the debtor intended to injure the creditor, to prevail in a complaint challenging dischargeability on the basis of 11 U.S.C. Section 523(a)(6)," *In re Gaebler*, 83 B.R. 264, 266-267 (E.D.Pa. 1988). Creditor argues that the Bankruptcy Court erred in holding that 11 U.S.C. Section 523(a)(6) requires creditor to prove a specific intent by debtor to harm the creditor.

Section 523(a)(6) of the Bankruptcy Code provides that a debtor shall not be discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The interpretation of the terms "willful" and "malicious" has engendered a divergence of opinion. Some courts have held that the statute requires an act by the debtor with the specific intent of harming the creditor, *see e.g., In re Lane*, 76 B.R. 1016 (Bankr.E.D.Pa.1987); *In re Finnie*, 10 B.R. 262 (Bankr.D.Mass.1981); *In re Hinkle*, 9 B.R. 283 (Bankr.D.Md.1981); *In re Graham*, 7 B.R. 5 (Bankr.D.Nev.1980); *In re Hodges*, 4 B.R. 513 (Bankr.W.D.Va. 1980). Other courts have held that the statute merely requires an intentional act by the debtor which results in an injury to the creditor, *see e.g., Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987); *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986); *In re Cecchini*, 780 F.2d 1440 (9th Cir.1986); *In re Adams*, 761 F.2d 1422 (9th Cir.1985); *In re Franklin*, 726 F.2d 606 (10th Cir.

1984); *Matter of Quezada,* 718 F.2d 121 (5th Cir.1983); *Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241 (5th Cir.1983); *Matter of Kearney Chemicals,* 468 F.Supp. 1107 (D.Del.1979); *In re DeRosa,* 20 B.R. 307 (Bankr.S.D.N.Y.1982); *In re Fussell,* 15 B.R. 1016 (W.D.Va.1981). A significant majority of the courts considering the issue have concluded that "willful and malicious" requires only the intentional doing of an act which necessarily leads to an injury. *See* 11 U.S.C.A. Section 523, n. 253.

In interpreting statutes, we seek to "ascertain the congressional intent and give effect to legislative will." *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). This intent may be ascertained from the plain language of the statute, or it may be necessary to look at the legislative history for guidance. While 11 U.S.C. Section 523 does not define the terms "willful" and "malicious", the House and Senate Reports which were prepared by the respective committees drafting the legislation, provide that "willful means deliberate or intentional." H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 365 (1977) *reprinted in* 1978 U.S. Code Cong. & Ad.News 5963, 6320–21; S.Rep. No. 95–989, 95th Cong., 2nd Sess. 79 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5865.

The leading bankruptcy treatise supports the majority interpretation of willful and malicious:

> In order to fall within the exception of Section 523(a)(6), the injury to any entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within the provision of it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

3 *Collier on Bankruptcy* Par. 523.16, at 523–117.

This Court finds that the Bankruptcy Court erred in concluding as a matter of law that creditor was required to prove that the debtor acted with the specific intent of harming creditor in order to successfully challenge dischargeability on the basis of 11 U.S.C. Section 523(a)(6). Rather, we adopt the majority view that a creditor need only prove that a debtor intentionally committed an act, without just cause or excuse, which necessarily produces injury, in order to successfully challenge dischargeability under 11 U.S.C. Section 523(a)(6).

### III.

■ Creditor's second ground for appeal concerns the Bankruptcy Court's conclusion of law that the issue of dischargeability under 11 U.S.C. Section 523(a)(6) could not be resolved on the basis of collateral estoppel, arising out of debtor's conviction by a Colorado Court for both second degree attempted murder and first degree assault. Specifically, creditor alleges that debtor's entry of guilty pleas to the criminal charges in Colorado bar relitigation in the Bankruptcy Court of the issue of whether debtor's shooting of creditor was "willful and malicious."

In an attempt to clarify the confusion attendant to the doctrine of collateral estoppel, the Third Circuit, in *Gregory v. Chehi,* after first substituting the term "issue preclusion" for "collateral estoppel", held that issue preclusion,

> bars relitigation only of an issue identical to that adjudicated in the prior action ... In issue preclusion cases ... the earlier judgment forecloses only a matter actually litigated and essential to the decision. The first judgment does not prevent re-examination of issues that might have been, but were not, litigated in the earlier action ...

843 F.2d 111, 116 (3d Cir.1988); *see also Riverside Memorial Mausoleum v. UMET Trust,* 581 F.2d 62, 67 (3d Cir.1978). Thus, in order to bar relitigation of the dischargeability issue, the court must find that the following four requirements are met: "(1) the issue sought to be precluded must be

the same as involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." *Matter of Ross*, 602 F.2d 604, 606 (3d Cir.1979) *quoting Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir.1976).

The Bankruptcy Court's rejection of issue preclusion was based upon its flawed conclusion of law that creditor was required to prove that debtor possessed a specific intent to injure creditor. As previously pointed out, however, creditor's burden is less strenuous, to wit, proving that debtor intentionally committed an act, without just cause or excuse, which necessarily produces injury. For the reasons stated below, this Court concludes that debtor's convictions for both second degree attempted murder and first degree assault, both of which are on the record in the form of certified state proceedings, bars debtor from litigating the issue of whether his shooting of creditor was a willful and malicious act within the meaning of 11 U.S.C. Section 523(a)(6).

The pertinent Colorado statute defines murder in the second degree, of which debtor was convicted of attempting, as causing "the death of a person knowingly, but not after deliberation." C.R.S. Section 18–3–103(1)(a). The requisite culpability of second degree murder, described by the term "knowingly", is the equivalent of willful conduct. *People v. Marcy*, 628 P.2d 69, 79–80 (Colo.1981). Moreover, the Colorado Supreme Court has, on numerous occasions, held that "second degree murder is a general intent crime which entails being aware that one's actions are practically certain to result in another's death." *People v. Mingo*, 196 Colo. 315, 584 P.2d 632, 633 (1978); *see also People v. Marcy*, 628 P.2d at 78; *People v. Del Guidice*, 199 Colo. 41, 606 P.2d 840 (1979). Thus, in entering a guilty plea to second degree murder, debtor admitted to the essential elements of the crime, to wit, that his shooting a gun at creditor constituted a willful commission of a wrongful act, without just cause or ex-

cuse, which was practically certain of producing injury.

Moreover, under Colorado law, first degree assault is defined in relevant part, as "With intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon; ..." C.R.S. Section 18–3–202(1)(a). Under Colorado law, the elements of assault and specific intent on the part of the assaulter must coexist in order to constitute the crime. *Crump v. People*, 129 Colo. 54, 266 P.2d 1100 (1954); *People v. Garcia*, 186 Colo. 167, 526 P.2d 292 (1974). Accordingly, debtor's guilty plea to first degree assault constitutes an admission to the majority interpretation of the willful and malicious standard of Section 523(a)(6) adopted by this Court.

This Court notes that the finding of willful and malicious acts under Colorado's second degree attempted murder and first degree assault statutes comports with the vast majority of court decisions in which "liabilities arising from assault or assault and battery are generally considered as founded upon a willful and malicious injury and are therefore within the exception." *Collier on Bankruptcy*, Par. 523.16, at 523–120. Thus, in factual circumstances similar to the instant case, courts have denied dischargeability to debtors who have assaulted and/or battered Section 523(a)(6) creditors. *See e.g., In re Pitner*, 696 F.2d 447 (6th Cir.1982) (debtor shot and killed husband of judgment creditor); *Vickers v. Home Indem. Co., Inc.*, 546 F.2d 1149 (5th Cir.1977) (debtor stabbed creditor with knife); *In re Siefke*, 61 B.R. 220 (Bankr.D.Mont.1986) (debtor beat arresting officer); *In re Wilson*, 49 B.R. 952 (Bankr. M.D.Ala.1985) (debtor shot neighbor in domestic dispute); *In re Beach*, 39 B.R. 56 (Bankr.W.D.Ky.1984) (debtor shot waitress during tavern brawl); *In re LaCasse*, 28 B.R. 214 (Bankr.D.Minn.1983) (debtor shot gun into parked camper).

Debtor's plea of guilty to second degree attempted murder and first degree assault charges establishes that debtor's shooting of creditor was a willful and malicious act. The Bankruptcy Court record below in-

cludes the Colorado civil judgment proceedings including certified copies of both the stipulated pre-trial order and the Order of Judgment which unequivocally establish that the civil judgment in the amount of $109,897.05 was based upon and resulted from the January 11, 1983 shooting of creditor by debtor. Indeed, the Bankruptcy Court found and the debtor admitted that the civil judgment was for injuries and other damages sustained as a result of the shooting incident. Thus, the prior criminal and civil proceedings in Colorado conclusively established that debtor's civil civil judgment obligation of $109,897.05 was for injuries to the creditor caused by the willful and malicious shooting of creditor by debtor. Because no reasonable doubt exists as to what was previously litigated and decided in the Colorado court proceedings, *see Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir.1970), this Court holds that the doctrine of issue preclusion barred relitigation of the issue of whether debtor's shooting of creditor, the act giving rise to the civil judgment against the debtor, is dischargeable under 11 U.S.C. Section 523(a)(6). *See generally* Ferriell, "The Preclusive Effect of State Court Decisions in Bankruptcy," 59 Am.Bankr.L.J. 55, 70 (1985).

## IV.

For the foregoing reasons, we will reverse the Bankruptcy Court's Order of February 20, 1988 holding that debtor Richard Adams Gaebler's obligation to creditor Gary Francis Blackman is dischargeable.