**In re Norman Edward COBLEY, Debtor.**

**Larry D. CLEMENS, Plaintiff,**

**v.**

**Norman E. COBLEY, Defendant.**

**Bankruptcy No. 87–02806F.**
**Adv. No. 87–0968F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 5, 1988.

Drew Salaman, Philadelphia, Pa., for plaintiff, Larry D. Clemens.

Jacquelyn A. Barnes, Philadelphia, Pa., for debtor/defendant, Norman E. Cobley.

Arthur Liebersohn, Philadelphia, Pa., Trustee.

OPINION

BRUCE I. FOX, Bankruptcy Judge:

The plaintiff, Larry D. Clemens, is a prison inmate who has filed a complaint in this bankruptcy case seeking a determination that the debt owed to him by the debtor, a former prison guard, is nondischargeable by virtue of 11 U.S.C. § 523. Although the specific nondischargeability provision by which the plaintiff seeks to proceed is not expressly stated, he alleges that the debt arose from "willful and malicious injuries inflicted by the debtor." Thus it would appear that the plaintiff is relying upon 11 U.S.C. § 523(a)(6).

I.

The incident which serves as the basis for this proceeding occurred on March 12, 1984 while the plaintiff, Mr. Clemens was incarcerated in the psychiatric wing of the Philadelphia Detention Center. The parties have propounded two very distinct versions of the same event, an altercation which apparently occurred shortly after the defendant/debtor, Mr. Cobley, brought the plaintiff his breakfast.

In summary, the plaintiff claims that he was in restraints which prevented him from

using two legs and an arm. He contends that an altercation occurred during which he was unable to defend himself. He further alleges that during the altercation, the defendant grabbed a broomstick and beat him with it, thereby causing severe injuries which resulted in loss of an eye.

For his part, the defendant contends that the plaintiff had partially freed himself from the restraints. The defendant alleges that the plaintiff threw his breakfast plate at him and then grabbed him and pulled him down. The defendant's version of events is that during the struggle, he struck the plaintiff in the lower portion of the face with his arm in attempting to free himself. He denies ever hitting the plaintiff with a broomstick. He also denies that the plaintiff suffered any injuries to his eye during the incident.

ı Preliminarily, before resolving the contested factual issues, I must address the plaintiff's contention that claim or issue preclusion [1] based on prior federal court litigation controls the outcome of this dischargeability proceeding.

In 1985, suit was brought by the plaintiff against the defendant in the District Court for the Eastern District of Pennsylvania pursuant to 42 U.S.C. § 1983 based on the incident which is at issue here. The debtor did not defend and default judgment was ultimately entered on the question of liability.

A trial for the purposes of determining damages was then held before Judge Bechtle of this district court pursuant to Fed.R. Civ.P. 55(b)(2). Again, the defendant did not appear. After hearing the plaintiff's evidence on damages, Judge Bechtle filed a memorandum order dated February 6, 1987, awarding plaintiff compensatory damages of $175,000.00 and punitive damages of $25,000.00.[2] In connection with the award of punitive damages, Judge Bechtle stated:

Punitive damages are awarded when the conduct complained of is so shocking and outrageous as to allow the imposition of a sum as a penalty and also to deter like conduct in the future. The evidence clearly suggests that the attack for which plaintiff makes complaint here was wholly unprovoked. While it is true that this virtually totally restrained plaintiff flung a paper plate with food particles at or near defendant, the vicious and extreme response by defendant to this initiating but trivial act of defiance by plaintiff was so excessive in response to plaintiff's conduct that it is clear that the attack measured by the severity and apparent deliberateness, must be, for all practical purposes, clearly and fairly characterized as unprovoked. There was no way that plaintiff could have physically either defended himself or come in contact with defendant, and there was no meaningful contact by plaintiff upon defendant that could have been genuinely anticipated by the defendant. Defendant used a physical object on an inmate which was in direct contravention of prison regulations, and which this particular defendant surely knew of by reason of his many years of service in the prison. The conduct was shocking, outrageous, grossly cruel and uncivilized, and clearly justifies the imposition of punitive damages. The court has determined that punitive damages should be, in addition to the compensatory damages, the sum of $25,000.00, for an aggregate verdict in favor of plaintiff and against defendant Norman E. Cobley in the sum of $200,-000.00.

## II.

■ As the Supreme Court noted in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the concept of claim preclusion (*res judicata*) does not

---

**1.** As recently suggested by the Court of Appeals for this circuit, I will adopt the term "claim preclusion" for the concept which has historically been labeled *res judicata* and "issue preclusion" for the concept which has been known as collateral estoppel. *Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988).

**2.** A certified copy of Judge Bechtle's memorandum order was made a part of the record in this proceeding.

apply in dischargeability proceedings in bankruptcy. That holding is based on a conclusion that the question of whether a debt is dischargeable is an issue of federal bankruptcy law. Indeed, a bankruptcy court has exclusive jurisdiction to decide cases under 11 U.S.C. § 523(a)(2), (4), (6). *See* 11 U.S.C. § 523(c); *In re Borbidge*, 81 B.R. 332, 334 (Bankr.E.D.Pa.1988). Although the judgment in the prior non-bankruptcy forum establishes the existence of the debt, the judgment cannot by a process of claim preclusion make the debt nondischargeable pursuant to section 523(a)(6). *Accord e.g., In re Daley*, 776 F.2d 834 (9th Cir.1985) *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). *See* Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy (First Installment)*, 58 Am.Bankr.L.J. 349, 356 (1984).

Issue preclusion or collateral estoppel is more complicated. In order for a debtor to be precluded from relitigating issues related to dischargeability, a four part test has been established in this circuit. *Matter of Ross*, 602 F.2d 604, 608–609 (3rd Cir.1979):

"... (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by valid and final judgment; and (4) the determination must have been essential to the prior judgment."

*Accord e.g. In re Gaebler*, 88 B.R. 62 (E.D. Pa.1988); *In re McCall*, 76 B.R. 490 (Bankr.E.D.Pa.1987). In determining whether this standard has been met, the bankruptcy court must carefully review the record made in the court issuing the prior judgment. *Matter of Ross*, 602 F.2d at 608.

■ It has been expressly held by the Third Circuit in controlling precedent that a prior default judgment has no preclusive effect in a bankruptcy proceeding insofar as no issues were "actually litigated" by

the defendant. *Matter of McMillan*, 579 F.2d 289 (3rd Cir.1978). *Accord e.g., In re Barigian*, 72 B.R. 407, 410 (Bankr.C.D.Cal. 1987). Thus, it is quite clear that the default judgment on liability entered in district court does not establish the requisite willful or malicious conduct to make the defendant's obligation to the plaintiff nondischargeable by virtue of section 523(a)(6).

In the case at bench, however, the plaintiff argues that there was an evidentiary hearing before Judge Bechtle on damages pursuant to Fed.R.Civ.P. 55(b)(2) and that the award of punitive damages establishes the defendant's willful and malicious conduct. Assuming *arguendo* that a finding of willful and malicious conduct is essential to an award of punitive damages,[3] the question becomes whether the question of punitive damages was actually litigated in district court given that the defendant did not defend or appear at the damage hearing.

I note first that a judgment entered pursuant to Rule 55(b)(2) is denominated a default judgment whether or not the defendant appears at the damage hearing. This is made clear by the terms of Rule 55(b). Thus, it would appear that the Third Circuit's holding in *McMillan* proscribing use of default judgment to establish nondischargeability under the bankruptcy code would apply.

To the extent that *McMillan* focuses on whether issues were "actually litigated," the question is whether they were actually litigated by the defendant, not the plaintiff. *In re McMillan*, 579 F.2d at 292:

... we conclude that because the bankrupts did not 'actually litigate' the Ocean County case, not even the facts which were necessary to that judgment can collaterally estop them from relitigating the same issues in the bankruptcy case.

The fact that a plaintiff is required to present evidence to obtain a default judgment does not mean the defendant has actually litigated those issues, especially

---

**3.** *See generally, Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (prerequisites for punitive damages in § 1983 actions). Certainly the language of Judge Bechtle's memoran-

dum, quoted above, can fairly be read to conclude the requisite willful and malicious conduct.

where the defendant does not appear at the hearing held.[4] *Accord Franks v. Thomason*, 4 B.R. 814, 822 (N.D.Ga.1980) ("The requirement that the issues sought to be estopped must have been 'actually litigated' in the prior proceeding contemplates something more than a one-sided presentation of facts.") *See also Matter of Shuler*, 722 F.2d 1253 (5th Cir.) *cert. denied* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984). This conclusion is further supported by a close reading of *McMillan* which reveals that in that case, the creditor did present evidence including testimony in state court prior to obtaining its default judgment. *Matter of McMillan*, 579 F.2d at 292 (creditor's president testified in state court regarding a telephone conversation with the debtor).

Because issue preclusion is not applicable to the case at bench, I must make specific findings of fact and conclusions of law pursuant to Bankr.Rule 7052 based on the evidence presented.[5]

### III.

1. The debt at issue in this dischargeability proceeding is a $200,000.00 judgment entered in the District Court for the Eastern District of Pennsylvania based on a lawsuit brought pursuant to 42 U.S.C. § 1983.

2. At the time of the incident giving rise to the debt, the plaintiff was incarcerated in the psychiatric unit of the Philadelphia Detention Center. The defendant was a prison guard assigned to that unit.

3. On March 10, 1984 an incident occurred during which the plaintiff refused to obey certain orders of the defendant. (Exhibit P-6, pp. 291–293). An altercation occurred between the plaintiff and numerous prison guards, during which the plaintiff was ultimately subdued. Although the plaintiff claims that the defendant beat him during the altercation with a metal pipe, the defendant denies physical contact with the defendant on March 10.

4. As a result of the incident, the plaintiff was ordered confined to his cell in "three point" leather restraints. The three point restraints prevented the plaintiff from using his right arm or either leg.

5. On the morning of March 12, 1984, the defendant brought the plaintiff his breakfast on a paper plate. Shortly afterward, the defendant made rounds and visited the plaintiff's cell.

6. Although defendant believed that plaintiff was sleeping, he inquired as to why the plaintiff had not eaten his breakfast. Plaintiff thereupon threw the breakfast plate at the defendant.

7. The defendant became enraged, seized a broomstick and began beating the plaintiff with it, in the head and chest.

8. The defendant hit the plaintiff in the left eye with the broomstick.

9. Very shortly after the incident, the plaintiff was taken to the hospital and treated *inter alia* for eye injuries. Ultimately, the plaintiff's left eye was removed.

---

**4.** I do not, of course, pass on issue preclusion if Mr. Cobley had appeared at the hearing on damages.

**5.** On the date originally scheduled for trial, the plaintiff offered only the district court record and memorandum in this matter. The defendant's counsel requested that I keep the record open to allow her an opportunity to bring the defendant in for testimony, which request was opposed by the plaintiff. I did allow the defendant to testify at a later date and plaintiff's counsel requested that he be allowed to have his client brought down from prison to testify in rebuttal. Because I had granted the defendant's request, I granted plaintiff's request as well. Ultimately, the parties stipulated to allow a transcript of a deposition of the plaintiff to be entered into the record. Additionally on rebuttal, plaintiff presented evidence of a prior inconsistent statement by the defendant.

Prior to rebuttal, however, plaintiff's counsel apparently was alerted to the fact that his case-in-chief might not carry the day under *McMillan*. I sustained an objection to his subsequent attempt to have an alleged eyewitness to the incident testify as an impermissible attempt to reopen his case-in-chief. A transcript of a deposition taken of the eyewitness was made part of the record as plaintiff's offer of proof. (Exhibit P-9). I have not read or otherwise considered that deposition in my decision in this proceeding.

10. Defendant's testimony that the plaintiff was in only one leg restraint when he entered the cell and that the other restraints were broken, (N.T. 1/27/88 p. 6), is undermined by prior inconsistent statements made by him in a prison "report of use of force", (Exhibit P–8a), (no mention of broken restraints), in a memorandum recording an interview by investigators, (Exhibit P–7) (one leg restraint broken) and in his civil service hearing testimony (Exhibit P–6) (one leg restraint broken). I find that the defendant's testimony on this point lacked credibility and that the plaintiff was in at least one arm and one leg restraint at the time of the incident.

11. The defendant's testimony that the plaintiff pulled him down onto his bed lacks credibility insofar as the defendant was in at least two restraints when the incident occurred. Additionally, the testimony is inconsistent with Ex. P–8a and Ex. P–7. In Exhibit P–7, a memorandum of an investigative interview with the defendant which took place during the same month as the incident, the following exchange is recorded:

Q. Mr. Cobley, do you agree to talk to Sgt. Bryant and Sgt. Tagye concerning the incident that took place on 3/12/84 between you and Larry Clemens 84–02021.

A. Yes.

Q. Mr. Cobley, tell us in your own words what occured [sic] on the morning of 3/12/84 between you and Larry Clemens.

A. When I open [sic] the door of the room I got hit with the entire breakfast meal and he tried to strike me with the tray and all I did was take the tray from him and controled [sic] his behavior by putting his arm in restraints.

Q. Mr. Cobley, how many restraints were Larry Clemens in when you entered 220–12 cell.[sic]

A. Two, it was supposed to be three. The third strap was there but it was broken.

Q. Who helped you place resident Larry Clemens in the third restraint.

A. I can't remember it's very vague. I can't remember if the Sarge gave me assistance, it happen [sic] so fast.

Q. Mr. Cobley, during your attempt to place inmate Larry Clemens in restraints did you strike the inmate at any time.

A. No.

Q. Do you Mr. Cobley, know of anyone who entered his cell during this incident and struck, hit or kicked him.

A. No.[6]

12. The defendant's testimony that the only blow to the plaintiff which he struck was made with his forearm to the lower part of the plaintiff's face, (N.T. 1/27/88 p. 7), was not made to any of the other investigatory authorities and is inconsistent with his civil service testimony, (Ex. P–6), and the investigatory interview. (Ex. P–7).

13. The defendant's statement that he witnessed no injuries to the plaintiff after the incident, (*Id.* at p. 5), is not consistent with his testimony that he asked the doctor on rounds to "check out" the plaintiff immediately after the incident or with the fact that the plaintiff was very shortly thereafter taken to the hospital.

14. The defendant was terminated from his position after the incident for inflicting corporal punishment on the plaintiff.

15. The plaintiff suffered severe injuries from the incident including loss of an eye.

## CONCLUSIONS OF LAW

1. Under 11 U.S.C. § 523(a)(6), a debtor is not discharged from debts "for willful and malicious injury by the debtor to another entity ..." The term "willful and malicious" refers to the intentional doing of an act which necessarily produces injury. *In re Gaebler*, 88 B.R. 62 (E.D.Pa.1988).

**6.** During the interview, various officials of a labor union, presumably representing Cobley, were present.

2. A creditor has the burden under 11 U.S.C. § 523(a)(6) to establish the requisite "willful and malicious" injury by clear and convincing evidence.

3. Plaintiff has carried his burden to establish that the debtor's conduct was willful and malicious within the meaning of section 523(a)(6). The debtor's $200,000.00 obligation to the plaintiff is nondischargeable.

## DISCUSSION

### A.

11 U.S.C. § 523(a)(6) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of the title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Under section 523(a)(6), it is the definition of willful and malicious injury which has been most frequently litigated. As recently noted by Chief Judge Twardowski of this court, the bankruptcy court decisions in this district have not been fully consistent on whether proof of specific intent to injure the creditor is required to establish malice. *See In re Horldt,* 86 B.R. 823, 825 (Bankr.E.D.Pa.1988).

Our district court has recently given some assistance in this regard. *In re Gaebler,* 88 B.R. 62 (E.D.Pa.1988). Relying on the legislative history and the leading commentator, Judge Broderick concluded, with the majority of courts, that "a creditor need only prove that a debtor intentionally committed an act, without just cause or excuse, which necessarily produces injury in order to successfully challenge dischargeability under 11 U.S.C. § 523(a)(6)." *Id.* at 65 at 7. *See* 3 *Collier on Bankruptcy,* ¶ 523.16 at 523–117 (15th ed. 1988). *Accord e.g., In re Cecchini,* 780 F.2d 1440 (9th Cir.1986).

Another disputed issue under section 523(a)(6) is the standard by which a plaintiff must prove his case. As recently noted by the court in *In re Salamone,* 71 B.R. 69, 70 n. 1 (E.D.Pa.1987), the reported decisions are divided on the issue. The Fourth Circuit Court of Appeals recently concluded that proof by only a preponderance of the evidence is required. *Combs v. Richardson,* 838 F.2d 112, 116 (4th Cir.1988). *Accord e.g., In re Moccio,* 41 B.R. 268, 273 (Bankr.D.N.J.1984). Several other courts have held that clear and convincing evidence is necessary. *E.g., Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1262 (11th Cir.1988); *In re Weingarten,* 49 B.R. 881, 884 (Bankr.N.D.Ohio 1985); *In re Irvin,* 31 B.R. 251, 257 (Bankr.D.Colo.1983); *In re Marini,* 28 B.R. 262 (Bankr.E.D.N.Y.1983).

In a recent decision involving denial of discharge under 11 U.S.C. § 727(a), I considered, in depth, the history of the requirement of clear and convincing evidence for certain issues in bankruptcy. *In re Garcia,* 88 B.R. 695, 698–702 (Bankr.E.D.Pa. 1988). I noted that the requirement of an elevated standard of proof has been most thoroughly integrated into bankruptcy law for proof of fraud under 11 U.S.C. § 523(a)(2). *Id.* at 699–700 at 10–11. In adopting a requirement of clear and convincing evidence for proof of fraud in bankruptcy, courts have relied on the long and virtually unbroken common law tradition of applying an elevated evidentiary burden to proof of fraud. *See e.g. Brown v. Buchanan,* 419 F.Supp. 199 (E.D.Va.1975). That tradition, in turn, is based on the principal that a finder of fact should not conclude that an individual's conduct is dishonest absent a fair degree of certainty based on the evidence, exceeding a mere preponderance. *See e.g., In re Locust Building Co.,* 299 F. 756, 765 (2d Cir.) *cert. denied* 265 U.S. 590, 44 S.Ct. 635, 68 L.Ed. 1195 (1924).

To some extent, concern about proof of fraud has carried over into the law under section 523(a)(6). Several early cases requiring proof of willful and malicious injury by clear and convincing evidence involved "willful and malicious" conversion of property. At least one judge concluded that "the proof necessary to establish a 'willful and malicious conversion' must essentially involve a showing of intentional fraud, dishonesty or deceit. *In re DeRosa,* 20 B.R. 307, 311 (Bankr.S.D.N.Y.1982).

*See also e.g., In re Auto Outlet Inc.*, 71 B.R. 674 (Bankr.D.Utah 1987). To the extent that proof of fraud was required to prove a case of willful and malicious conversion, the historical requirement of clear and convincing evidence became relevant. *Id.* Several courts then followed *In re DeRosa* for the broad principle that clear and convincing evidence is mandated for any case under section 523(a)(6). *E.g., In re Irvin*, 31 B.R. 251 (Bankr.D.Colo.1983). Indeed, it has become fairly common for courts to hold generically that any case under section 523(a) must be proved by clear and convincing evidence.[7] *E.g., In re Schwartz*, 45 B.R. 354, 357 (Bankr.S.D.N.Y.1985); *In re Nicoll, Inc.*, 42 B.R. 87, 90 (Bankr.N.D.Ill.1984).

In reviewing the history of the use of the clear and convincing evidentiary standard in bankruptcy and out, what becomes clear is that judges as fact finders have been reluctant to conclude that someone has acted dishonestly based on a mere preponderance of the evidence. This has been particularly true in cases involving fraud. *In re Auto Outlet.* At bottom, use of the clear and convincing standard has been found appropriate where the actions complained of (*e.g.* fraud) are essentially criminal or involve moral turpitude. *See In re Huff*, 1 B.R. 354, 357 (Bankr.D.Utah 1979).

Under section 523(a)(6), the need to establish "willful and malicious injury" requires some proof that the debtor's conduct was not only intentional but wrongful. *In re Gaebler. See also, In re Horldt.* This makes section 523(a)(6) analogous to the law of intentional torts. Although historically, there is not the same common law tradition of proving intentional torts by an elevated standard of proof[8] as there is for proof of fraud, the same rationale for an elevated standard (i.e. the need for care in concluding that an individual acted wrongfully) would appear to apply for both.

■ I have previously concluded with the great majority of courts that clear and convincing evidence is required to prove fraud under 11 U.S.C. § 523(a)(2). *In re Paolino*, 89 B.R. 453, 462 (Bankr.E.D.Pa. 1988). I do not believe that it makes sense to apply a lesser standard to prove a "willful and malicious injury" in bankruptcy than to prove fraud. This is especially true given the requirement that all exceptions to dischargeability be construed narrowly. *E.g., In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986).

What is left then is to consider whether plaintiff has carried his burden by clear and convincing evidence.

### B.

It is clear from the evidence that the plaintiff suffered serious injuries which were treated in close proximity to the incident complained of. The defendant's attempt to explain the injuries in his testimony as possibly resulting from the altercation which took place two days earlier is undermined by the fact that plaintiff remained at the prison during those two days and only received emergency medical care immediately after the later incident. I can thus infer that plaintiff's injuries occurred as a result of the incident in which the defendant is directly implicated.

---

7. Most likely these courts are only considering 523(a)(2), (4) and (6). Other subsections, such as 523(a)(8), have completely different considerations in allocating the burden of proof. *See e.g., In re Alliger*, 78 B.R. 96 (Bankr.E.D.Pa. 1987).

8. I noted in *In re Paolino*, 89 B.R. 453, 462 n. 12 (Bankr.E.D.Pa.1988) that it makes eminent sense to apply a requirement of clear and convincing standard for proof of fraud in bankruptcy court where clear and convincing evidence would be required to prove fraud in state court. It should not be easier to have a debt declared non-dischargeable than it is to establish the debt in a non-bankruptcy forum. The converse, however, may not be true. Given the requirement that exceptions to discharge be narrowly construed, I see no problem with a scheme which makes it more difficult to have a debt declared nondischargeable than it would be to establish the debt under state law. I thus disagree, at least in part, with Bankruptcy Judge Queenan's thoughtful opinion in *In re Daboul*, 85 B.R. 197 (Bankr.D.Mass.1988).

I have been presented with two very different versions of the same incident. As discussed above in findings of fact, however, the plaintiff has presented evidence which seriously undermines the credibility of the defendant's version of events. The defendant's current rendition of the incident is at odds with all of his previous statements. It thus appears that the defendant has attempted to adjust his testimony solely to present a version of events which will exculpate him from liability here. In short, given the defendant's lack of credibility, the evidence is clear and convincing that the defendant beat the plaintiff with a broomstick without just cause or excuse.[9] This act resulted in the requisite "willful and malicious injury" contemplated by the statute. Defendant's debt to the plaintiff is therefore nondischargeable.

An appropriate order will be entered.

**9.** The defendant does not argue, nor would I accept, that the plaintiff's initiation of the incident by throwing his breakfast plate justifies his ensuing actions.