**In re Donald D. GLEN, Debtor.**

**Mark H. IHA, Plaintiff,**

v.

**Donald D. GLEN, Defendant.**

**Bankruptcy No. 89–14728S.
Adv. No. 90–0267S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 3, 1990.

James M. Matour, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for plaintiff.

Stephen Raslavich, Silberman, Markovitz, Meo & Raslavich, Philadelphia, Pa., Trustee.

James A. Hartz, Glenside, Pa., for debtor-defendant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

██ It is very tempting to render a final ruling in a dischargeability proceeding on a motion for summary judgment, particularly when, as here, the parties each submitted volumes of several hundred pages of materials in reference to the summary judgment motion itself, promising that we will be favored with even more submissions and faced with a long trial if the motion is denied. However, here, we are prepared to resist this temptation, because we find that the Plaintiff's attempt to utilize collateral estoppel from a prior federal district court decision in Hawaii in his favor is marred by passages in that decision which indicates that the district court has not "clearly and unmistakably made legal conclusions which

coincide precisely with the requirements of a particular provision of § 523(a)," *In re Butler*, 86 B.R. 829, 831 (Bankr.E.D.Pa. 1988), here 11 U.S.C. §§ 523(a)(2)(B) and (a)(6). The Plaintiff's motion is therefore denied.

On December 26, 1989, DONALD D. GLEN ("the Debtor") filed an individual Chapter 7 case in this court. To date, the most unusual feature of the main case was the filing therein of a voluminous "motion" by Patricia Diane Glen–Morgan, the former wife of the Debtor ("Patricia"), to alternatively dismiss the case or obtain relief from the automatic stay to litigate, in federal court in Hawaii, a lawsuit basically collaterally attacking certain Hawaii state court orders concerning custody and distribution of property. We denied this motion from the bench after a lengthy hearing on May 29, 1990. Patricia thankfully voluntarily dismissed a related adversary proceeding (Adv. No. 90–0271S) attacking the Debtor's right to a discharge and dischargeability of his alleged obligations to her on the eve of trial on June 28, 1990. This development reminds us that matters which promise to be time-consuming can unravel in mysterious ways, causing us to refrain from despair in contemplating what awaits us in this proceeding in light of our instant ruling.

This proceeding was commenced by MARK A. IHA ("the Plaintiff") on April 20, 1990. An initial trial listing of June 4, 1990, was continued, on a must-be-tried basis, to August 9, 1990. The instant Motion for Summary Judgment was filed, with a huge Appendix of exhibits and much shorter Memorandum of Law, on June 12, 1990. When we came upon it, we immediately entered an Order of June 14, 1990, directing the Debtor to respond to these filings by June 28, 1990. Having received a one-day dispensation, the Debtor filed an Answer, an Affidavit to which a huge batch of Exhibits were attached, and a short Memorandum of Law on June 29, 1990.

The Complaint alleges that the Debtor misrepresented the financial condition of Wholesale Office Furniture, Inc. ("WOFI") to the Plaintiff in connection with a trans-

action in which the Debtor and his present wife, Marylyn, a practicing physician in Chester, Pennsylvania ("Marylyn"), sold all of WOFI's stock, which they held, to the Plaintiff by means of an Agreement of Sale of September 2, 1988. The Plaintiff was awarded summary judgment against the Debtor and Marylyn in two separate Orders, containing significant discussions of the matter on December 5, 1989, in C.A. No. 88–00912 (D.Hawaii) (hereafter this matter is referred to as "the Hawaii Case," these Orders as "the Hawaii Orders," and the district court rendering them as "the Hawaii Court"), one finding merit in the Plaintiff's allegations of violations of federal and state securities law, and the other concluding that there was a lack of merit in the Defendants' affirmative defenses and counterclaim. Damages were not liquidated, although punitive damages were denied. The matter is apparently still proceeding against Marylyn, who is not a debtor. *See, e.g., Ingersoll Rand Financial Corp. v. Miller Mining Corp.,* 817 F.2d 1424, 1427 (9th Cir.1987); *Greene & Kellogg, Inc. v. Oxford Hospital, Inc.,* 95 B.R. 26, 27 (E.D.Pa.1989); and *Personal Designs, Inc. v. Guymar, Inc.,* 80 B.R. 29, 30 (E.D.Pa.1987) (in a Chapter 7 case, the automatic stay does not affect a plaintiff's right to proceed against a co-debtor).

The Complaint recites three Counts: (1) a request that a discharge of the Debtor's obligation to the Plaintiff be denied on the ground that the Debtor made "false representations" to the Plaintiff, which, without referencing any subsection thereof, invokes 11 U.S.C. § 523(a)(2); (2) a request that a discharge of the Debtor's obligation on the said debt be denied on the alternative ground that the Debtor caused "willful and malicious injury" to the Plaintiff, pursuant to 11 U.S.C. § 523(a)(6); and (3) a request

for relief from the automatic stay to proceed with the Hawaii Case.[1]

The instant motion is based solely upon the Plaintiff's contention that application of the principles of collateral estoppel, arising from the Hawaii Orders, requires entry of a judgment declaring the obligations of the Debtor to him nondischargeable. The Plaintiff's Memorandum of Law also makes clear that the Plaintiff relies solely upon 11 U.S.C. §§ 523(a)(2)(*B*) and (a)(6), which provide as follows, as the bases of his claims:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.　　.　　.　　.　　.

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

.　　.　　.　　.

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; . . .

.　　.　　.　　.

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

A claim of collateral estoppel, particularly in a dischargeability case arising after another court has rendered a decision on

---

1. This request is improperly not made by motion, *see* Bankruptcy Rule 4001(a)(1), and therefore will not be considered by us. We note that, as an unsecured creditor, the Plaintiff would bear the heavy burden of proving that the balance of hardships tips in his favor to obtain this relief. *See, e.g., In re FRG, Inc.,* 114 B.R. 75, 78–79 (E.D.Pa.1990); *In re Metro Transportation Co.,* 82 B.R. 351, 353 (Bankr.E.D.Pa.1988); and *In re Ronald Perlstein Enterprises, Inc.,* 70 B.R. 1005, 1009–10 (Bankr.E.D.Pa.1987). Since we

anticipate that this case will be promptly administered and a general discharge entered shortly in due course, this relief appears less than crucial. We would, however, be inclined to allow the Hawaii Court to ultimately liquidate the Plaintiff's damages if the obligation is declared nondischargeable. *See In re Stelweck,* 86 B.R. 833, 844–45 (Bankr.E.D.Pa.1988), *aff'd sub nom. United States v. Stelweck,* 108 B.R. 488 (E.D.Pa. 1989).

the merits of a claim against a debtor, can be successfully raised

> if and only if the following four requirements are met as to the issue in question: " '(1) the issue sought to be precluded must be the same as involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.' *Matter of Ross*, 602 F.2d 604, 606 (3d Cir.1979) *quoting Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir.1976)."

*In re Gaebler*, 88 B.R. 62, 65–66 (E.D.Pa. 1988).

*In re Bergman*, 103 B.R. 660, 663 (Bankr. E.D.Pa.1989).

■ In *Bergman*, we quoted at length from the precise language of the district court's ruling on liability in trying to ascertain what effect should be given to the pre-bankruptcy court decision on the merits of the claim. *Id.* at 663–66. We cautioned, however, that the district court's characterizations of the evidence which were not "essential" to its decision do not give rise to issue-preclusion. *Id.* at 669.[2]

We find most helpful to the Plaintiff's cause the following passage finding the Debtor liable to him, appearing at 12–13 of the first of the Hawaii Orders:

> Beyond showing that Defendants made both material misrepresentations and material omissions in the sale of the WOFI stock, Plaintiff has also conclusively shown that Defendants' conduct fulfills all the other elements of a claim under the securities laws. Plaintiff has shown that Defendants employed the mails and the telephone in effecting this transaction, so Defendant utilized instrumentali-

ties of interstate commerce. It is clear, as noted earlier, that Defendants knowingly made these misrepresentations and omissions as required for liability. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185 [96 S.Ct. 1375, 47 L.Ed.2d 668] (1976). Liability under the securities laws requires a showing of "scienter" which is defined as "intent to deceive, manipulate, or defraud." *Id.* at 188 [96 S.Ct. at 1378]. Although the Supreme Court specifically refrained from deciding the issue, *id.* at 194, n. 12 [96 S.Ct. at 1381, n. 12], the Ninth Circuit has clearly held that *reckless* misrepresentation or omission fulfills the requirement of scienter. *Nelson v. Serwold*, 576 F.2d 1332 (9th Cir.1978). Given the overwhelming nature of WOFI's financial woes and the lengths to which Defendants went to conceal them, it appears obvious that they intended to deceive and defraud the Plaintiff.

On the other hand, the following passage, *id.* at 17, denying punitive damages to the Plaintiff, appears helpful to the Debtor:

> Even if punitive damages were available under the securities laws, summary judgment on that issue would be inappropriate. Although the facts clearly establish that Defendants acted with knowledge and intent to deceive, they do not indisputably show that the Defendants' fraud involved high moral culpability or that they acted with actual malice. Instead it appears that Defendants overzealously unloaded a failing company.

These passages must be weighed against the criteria for ascertaining nondischargeability under §§ 523(a)(2)(B) and (a)(6), in order to determine whether, in those portions of the Order essential to its judgment,

---

2. This observation addresses the query as to what the legal effect would be if a trial court, after rendering a judgment on the merits, was clairvoyant enough to foresee a forthcoming bankruptcy filing by the judgment debtor and specifically held that the debtor would not (or would) be discharged from the liability which the court found upon the filing of a subsequent bankruptcy. It is logical to assume that any court, having rendered a just decision, might be struck with the injustice of its work's being undone by a bankruptcy and attempt to thus insulate its work from attack.

We submit that the legal effect of any such ruling should not be controlling. A determination on dischargeability of a debt is solely within the purview of the bankruptcy court. *See Brown v. Felson*, 442 U.S. 127, 138–39, 99 S.Ct. 2205, 2212–13, 60 L.Ed.2d 767 (1979). A determination of dischargeability would never appear to be "essential" to a ruling on liability and should, for that reason, not give rise to any collateral estoppel as to that ultimate issue.

the Hawaii Court made findings which meet those criteria.

In *In re Braen*, 900 F.2d 621, 624–26 (3d Cir.1990), the Court of Appeals held that the standard of proof by which a plaintiff in a § 523(a)(6) proceeding must prove a case is the "preponderance of evidence" standard, as opposed to the "clear and convincing evidence" standard. This result may have been influenced by the aggravated facts in the *Braen* case. There, a state-court jury had found, in special interrogatories, that the debtor had acted both intentionally and with a "malicious motive" in misinforming state authorities of allegations that the plaintiff rigged certain state construction contracts, resulting in a verdict of liability for malicious prosecution against the debtor. *Id.* at 626–28. The *Braen* court thus rather easily concluded that the state court proceeding had resulted in a finding that the plaintiff suffered "willful and malicious injury" at the hands of the debtor. *Id.* at 628.

In the first of the pertinent Orders, in the Hawaii Case, the Hawaii Court specifically declined to conclude that that Debtor and his wife acted with "high moral culpability" or with "actual malice." Furthermore, the Hawaii Court was not acting on the basis of a specific jury finding, as in *Braen*, or even on the basis of live evidence adduced at trial, but on a summary judgment motion. Section 523(a)(6) requires, in the conjunctive, that the Debtor's actions be both willful *and* malicious. We are therefore reluctant to decide, at this juncture, that the Plaintiff is entitled to prevail on his count based on § 523(a)(6).[3]

We therefore pass to the Plaintiff's alternative claim, under § 523(a)(2)(B). At the outset, we note some surprise that the Plaintiff has definitively rested his § 523(a)(2) claim, ambiguously stated in his Complaint, as being based upon § 523(a)(2)(*B*) rather than upon § 523(a)(2)(*A*). The latter Code section renders nondischargeable any claim based upon a "false representation." The Complaint seemed to address such a claim, rather than a contention that the Debtor provided the Plaintiff with a false financial statement. However, the Plaintiff's Memorandum of Law repeatedly specifically invokes § 523(a)(2)(B).

In *In re Martz*, 88 B.R. 663, 670 (Bankr. E.D.Pa.1988), our most extensive treatment of § 523(a)(2)(B), we characterized the plaintiff's heavy burden of proving all of the four elements of § 523(a)(2)(B) as follows:

> As in the case of § 523(a)(2)(A), *see, e.g., In re Fitzgerald*, 73 B.R. 923, 926 (Bankr.E.D.Pa.1987), all of the statutory prerequisites of § 523(a)(2)(B) must be proven by clear and convincing evidence by the plaintiff in a dischargeability case based on this Code section. *See, e.g., In re Bogstad*, 779 F.2d 370, 372 (7th Cir. 1985); *In re Bonnett*, 73 B.R. 715, 717 (C.D.Ill, 1987); *In re O'Karma*, 46 B.R. 422, 423 (M.D.Pa.1984); *In re Figueredo*, 84 B.R. 856–57 (Bankr.S.D.Fla.1988); *In re Lippert*, 84 B.R. 612, 617 (Bankr.D. Minn.1988); *In re Duncan*, 81 B.R. 665, 667 (Bank.M.D.Fla.1987); *In re Bossard*, 74 B.R. 730, 734 (Bankr.N.D.N.Y.1987); and *In re Turner*, 69 B.R. 995, 996 (Bankr.S.D. Ohio 1987).

We perceive two potential difficulties with the Plaintiff's § 523(a)(2)(B) claim; (1) Throughout the literally reams of materials submitted by both parties addressing this motion, it is difficult for us to identify what specific "statement in writing" the contents of which were false the Debtor is alleged to have submitted to the Plaintiff; and (2) The passages from the Hawaii Order quoted at page 840 *supra* leaves some

---

**3.** The *Braen* opinion does not resolve the split of authority, dividing the judges of our bankruptcy court and our district court, on the issue of whether the plaintiff, in a § 523(a)(6) proceeding, must prove a specific intent to harm the plaintiff to prevail, as opposed to proving only the commission of an intentional act which necessarily leads to an injury. *Compare United States v. Stelweck*, 108 B.R. 488, 496–97 (E.D.Pa. 1989); and *In re Gaebler*, 83 B.R. 264, 267 (Bankr.E.D.Pa.), *rev'd*, 88 B.R. 62, 18 B.C.D. 332 (E.D.Pa.1988) (specific intent to harm required), *with In re Gaebler*, 88 B.R. 62, 64–65 (E.D.Pa. 1988); and *In re Holzinger*, 89 B.R. 529, 532 n. 4 (Bankr.E.D.Pa.1988) (specific intent to harm not required). *See generally* Comment, *The Exception to Discharge for Willful and Malicious Injury: The Proper Standard for Malice*, 7 BANKR. DEV.L.J. 245 (1990).

doubt in our mind as to whether the Hawaii Court found that the Debtor "intended to deceive" the Plaintiff.

Regarding the first element, the Hawaii Court's first Order is replete with findings that the Debtor made numerous oral statements to the Plaintiff which were false, which resulted in violations of the terms of the parties' written Agreement for Sale of Stock ("the Agreement"). *See* slip op. at 4–8. However, we find the Agreement itself to be rather generalized in reciting the seller's commitments. We doubt whether the Agreement itself could be characterized as a statement of the "financial condition" of either the Debtor and his wife or of WOFI.

Regarding the second element, we particularly note the statement of the Hawaii Court which suggests that the Court found *"reckless* misrepresentation," first Hawaii Order, slip op. at 13, to be present rather than actual intent of the Debtor to deceive. The statement later in that Order, which expressly declines to find "actual malice," *id.* at 17, casts further doubt on whether the Hawaii Court concluded that the Debtor acted with the requisite "intent to deceive."

These two elements must be clearly and convincingly proven under §§ 523(a)(2)(B)(ii), (iv). Considering each of these requirements individually, and certainly when considering them cumulatively, causes us to refrain from deciding this proceeding on a motion for summary judgment. We note particularly our statement in *Butler, supra,* denying cross motions for summary judgment of both the non-debtor-plaintiff and the debtor-defendant in a § 523(a)(2)(A) proceeding, that

we do not consider the application of collateral estoppel to dischargeability complaints to be broad. Only when the court trying the claim concerning which dischargeability is sought has clearly and unmistakably made legal conclusions or factual findings which coincide precisely with the requirements of a particular provision of § 523(a) would be inclined to

apply collateral estoppel in favor of either the claimant or the debtor in such a case. A re-trial of a matter previously tried for determination of liability for purposes of determining dischargeability may be tedious. However, we believe that it is necessary in almost every case. It is our experience that disposition of dischargeability complaints turns largely on the credibility of the parties. *Compare Gaebler, supra,* 83 B.R. at 269 (debtor credible; debt discharged) *with In re Mistry,* 77 B.R. 507, 510, 512–13 (Bankr.E.D.Pa.1987), *aff'd sub nom Writer v. Mistry,* C.A. No. 87–6466 (E.D.Pa. Feb. 9, 1988); and *In re Somerville,* 73 B.R. 826, 833, 837, 838 (Bankr.E.D.Pa.1987) (debtors not credible; debts not discharged) It is necessary to receive live testimony from the most significant party involved, *i.e.,* the debtor, to make a credibility determination. Therefore, unless the court which has previously tried the matter had made very specific findings on the very issues relevant to the dischargeability complaint, which usually include credibility, we would not apply collateral estoppel.

We are herein presented with the findings of the Hawaii Court, without an opportunity on our part to make any observations about the credibility of any interested parties, particularly the Debtor. We are reluctant to make our decision here strictly on the basis of these findings, which also were made without the benefit of the Hawaii Court's observation of the parties. Summary judgment is a "drastic remedy." *See, e.g., In re Jackson,* 92 B.R. 987, 990 (Bankr.E.D.Pa.1988). We will not employ it here, where at least some measure of doubt exists regarding the correct result.

However, we do not mean to suggest, in making this ruling, that we are inclined to render summary judgment in favor of the Debtor, either.[4] In his response to the Plaintiff's motion, the Debtor devotes considerable energy to attempting to convince us that the Hawaii Order should not be accorded significant weight because the

---

**4.** We would be empowered to enter summary judgment in favor of the Debtor, despite the absence of a cross-motion filed by him requesting this relief, if we considered it proper to do so. *See* 6 J. MOORE, FEDERAL PRACTICE, ¶ 56.12, at 56–161 to 56–165 (2d ed. 1990).

merits of his position were substantial and were not brought to the attention of the Hawaii Court because his counsel in that action failed to properly represent him due to preoccupation with his own personal problems. Also, he alleges that his counsel deceived him about the nature of the papers and the defenses that he was raising and matters that he was presenting on behalf of the Debtor. However, as *Braen, supra,* 900 F.2d at 629, points out, to consider such matters as defenses to the collateral estoppel effect of a judgment "would seriously undermine the doctrine of issue preclusion and impose an unjust burden on prevailing litigants and the legal system."

The Debtor must appreciate that there is a valid judgment of the Hawaii Court which confronts him and that, while he could possibly attack that judgment directly if he believes that cause exists to do so, *see* Federal Rules of Civil Procedure 60(b)(1) and (b)(6), we will not countenance a collateral attack upon that judgment here. It is true that we might consider, to a certain degree, that the Hawaii Court's judgment was entered on a paper record, rather than, as in *Braen,* after a full trial by jury. However, we cannot discount that court's judgment to any significant degree, as we could if it were a default judgment entered without the Debtor's having had any opportunity to present a defense. *Compare In re Millan,* 579 F.2d 289, 292–93 (3d Cir.1978); and *In re Cobley,* 89 B.R. 446, 447–49 (Bankr.E.D.Pa.1988). The Plaintiff certainly cannot be blamed for the shortcomings of the Debtor's chosen counsel in the Hawaii Case.

Therefore, we believe that the Debtor would probably be wise to make peace with the Plaintiff on some mutually-acceptable terms. This decision will possibly cause the Plaintiff to be receptive to some such resolution. We are hence hopeful that, as ultimately occurred in *Butler,* this matter may, in a less-than-mysterious way, be resolved without the necessity for our conducting a costly and time-consuming trial involving parties literally and figuratively 5,000 miles apart.

An appropriate Order will be entered.