## BLANK v. CLARK.

### Civ. A. No. 7343.

District Court, E. D. Pennsylvania.
Aug. 12, 1948.

374

Robert T. McCracken, of Montgomery, McCracken, Walker & Rhoads and Joseph Blank, all of Philadelphia, Pa., for plaintiff.

George B. Searls, Chief Trial Atty., of Washington, D. C., and Thomas J. Curtin, Asst. U. S. Atty., and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., for defendant.

GANEY, District Judge.

This is an action brought pursuant to Section 9(a) of The Trading with the Enemy Act [1] (hereinafter referred to as the Act) to recover property vested in the Attorney General as successor to the Alien Property Custodian [2].

The facts are these: On November 9,

---

[1] Act of October 6, 1917, c. 106, Secs. 1-31, as amended, §§ 32–38 as added, 50 U.S.C.A.Appendix, §§ 1–38.

[2] By Executive Order No. 9788, 11 Fed. Reg. 11981, 3 CFR, 1946, Supp. p. 169, 50 U.S.C.A.Appendix, § 6 note, the functions of the Alien Property Custodian were transferred, effective October 15, 1946, to the Attorney General.

The establishment of the Alien Property Custodian and the authority delegated to him is set forth in Executive Order 9095, March 11, 1942, 7 Fed.Reg. 1971, as amended, 50 U.S.C.A.Appendix, § 6 note.

1945, Emma K. Weber, a resident and citizen of Pennsylvania, died intestate leaving property situated in that state valued at approximately Two Hundred Fifty Thousand Dollars ($250,000.00). The property consisted of a number of parcels of real estate, rents accruing therefrom and insurance policies covering the properties. On February 4, 1947, the Orphans' Court of Philadelphia County concluded that seven cousins of the deceased, who originally claimed the estate, were the persons entitled to inherit it as next of kin. Gottlieb Weller, an eighth cousin and a national of Germany, was not one of the claimants. Six days later, the plaintiff, Joseph Blank, Esquire, received a cablegram from a lawyer residing at Strasbourgh, France, requesting him to enter an appearance in the proceeding then before the Orphans' Court as attorney for Gottlieb Weller who claimed a share of the estate. Shortly thereafter, the plaintiff received from the French lawyer two documents purporting to grant a power of attorney and an assignment of a fractional share of Weller's interest in the estate to the plaintiff. Payment of his costs and fee was to be obtained exclusively from the assigned share. Both documents were executed by Weller in Germany on January 16, 1947. On February 26, 1947, the Orphans' Court amended its original adjudication to include Weller as one of the heirs entitled to receive a one-eighth interest in the estate. On March 31, 1947, the defendant, as successor to the Alien Property Custodian vested[3] in himself all right, title and interest of Weller in the estate. On April 28, 1947, the plaintiff filed a notice of claim with the defendant for the return of a fractional interest of the vested estate. On May 15, 1947, prior to any decision being made by the defendant with respect to the claim, the plaintiff brought this action.

The defendant has moved to dismiss the complaint because it fails to allege that the assignment by virtue of which the plaintiff claims an interest in the estate was licensed by the Secretary of the Treasury as required by Executive Order No. 8389[4], as amended.

In a memorandum[5] of the President dated February 12, 1942, all powers conferred upon the President by section 3(a) of the Trading with the Enemy Act were delegated to the Secretary of the Treasury. On the last day of 1942 the President issued a general license[6] which provided as follows: "A general license is hereby granted licensing any transaction or act prohibited by Section 3(a) of the Trading with the Enemy Act, as amended: Provided, However, That such transaction or act is authorized by the Secretary of the Treasury by means of regulations, rulings, instructions, licenses or otherwise, pursuant to Executive Order No. 8389, as amended". Pursuant to the authority delegated to him, the Secretary of the Treasury issued a number of general rulings, licenses and instructions. The plaintiff contends that section 5(b) of General Ruling No. 12[7], issued April 12, 1942, expressly excluded real property from transfers

[3] See Vesting Order No. 8599, 12 Fed. Reg. 2543.

[4] This Order was issued April 10, 1940. As reamended by Executive Order No. 8785, on June 14, 1941, 6 Fed.Reg. 2897, 3 CFR, 1941 Supp. p. 225, 12 U.S.C.A. § 95a note, it provided in part as follows: "Section 1. All of the following transactions are prohibited, except as specifically authorized by the Secretary of the Treasury by means of regulations, rulings, instructions, licenses, or otherwise, if (i) such transactions are by, or on behalf of, or pursuant to the direction of any foreign country designated in this Order, or any national thereof, or (ii) such transactions involve property in which any foreign country designated in this Order, or any national there-

of, has at any time on or since the effective date of this Order had any interest of any nature whatsoever, direct or indirect: * * * E. All transfers, withdrawals or exportations of, or dealings in, any evidence of indebtedness or evidences of ownership of property by any person within the United States; and F. Any transaction for the purpose or which has the effect of evading or avoiding the foregoing prohibitions. * * *" By section 3(j) of this Order, Germany was designated as a foreign country referred to in section 1.

[5] 7 Fed.Reg. 1409, 50 U.S.C.A.Appendix, § 3, note.

[6] 3 CFR, Cum.Supp. p. 1328.

[7] 7 Fed.Reg. 2991, 31 CFR, Cum.Supp., App. A., p. 8849.

which are prohibited. However before the plaintiff gets to General Ruling No. 12, he is met by General Ruling No. 11[8], as amended. This ruling as far as is material here, sets forth: "(1) Trade And Communication With An Enemy National Prohibited. Unless authorized by a license expressly referring to this general ruling, no person shall, directly or indirectly, enter into, carry on, complete, perform, effect, or otherwise engage in, any trade or communication with an enemy national, or any act or transaction which involves, directly or indirectly, any trade or communication with an enemy national. * * * (4) Definitions: As used in this general ruling and in any other rulings, licenses, instructions, etc.: * * * (d) The term 'trade or communication with an enemy national' shall mean any form of business or commercial communication or intercourse with an enemy national after March 18, 1942, including without limitation, the sending, taking, obtaining, conveying, bringing, transporting, importing, exporting, or transmitting, or the attempt to send, take, obtain, convey, bring, transport, import, export, or transmit; (i) any letter, writing, paper, telegram, cablegram, wireless message, telephone message, or other communication, whether oral or written, of a financial, commercial, or business character; or (ii) any property of any nature whatsoever, including * * * powers of attorney, evidence of ownership, evidence of indebtedness, evidence of property, or contracts; directly or indirectly to or from an enemy national after March 18, 1942 * * *".

Obviously the Secretary of the Treasury had the authority under Executive Order 8389[9] as amended, to issue this general ruling. It is equally obvious that the transaction in this case was accomplished through means prohibited by such ruling. This being the case, the purported power of attorney and assignment, unless otherwise licensed, do not give or transfer any interest to the plaintiff. See Okihara v. Clark, D.C.Hawaii, 71 F.Supp. 319. That the plaintiff may have communicated with Weller through an attorney in France will not take the transactions out of the general ruling. United States v. Krepper, 3 Cir., 159 F.2d 958, 972.

Plaintiff then argues that prior to February 26, 1947, the date on which the Orphans' Court amended its adjudication to include Weller as one of the heirs entitled to share in the estate, Weller did not have an interest in the estate. If his argument is correct, plaintiff would be able to obtain the benefit conferred by Treasury General License No. 94, as amended March 4, 1947, which granted a general license to nationals of Germany to make transfers, with certain exceptions, that had hitherto been forbidden. This license, which is set forth in the footnote [10], was made retroactive to December 31, 1946.

In Pennsylvania, upon the death of an intestate, title to real property belonging to his estate decends immediately

---

[8] This General Ruling was originally issued on March 18, 1942, 7 Fed.Reg. 2168, as amended, 31 CFR, Cum.Supp., App.A., p. 8848. On September 3, 1943, it was reamended. 8 Fed.Reg. 12287, 31 CFR, 1943, Supp., App.A., p. 1310.

[9] See note 4, supra.

[10] "(a) Blocked countries generally licensed subject to certain conditions. A general license is hereby granted licensing all blocked countries and nationals thereof to be regarded as if such countries were not foreign countries designated in the Order, provided that: '(1) Any property in which on the effective date hereof any of the following had an interest: (i) any blocked country (including countries licensed hereby) or persons therein; or (ii) any other part-

nership, association, corporation, or other organization, which was a national of a blocked country (including countries licensed hereby) by reason of the interest of any such country or person therein; or (2) Any income from such property accruing on or after the effective date hereof shall continue to be regarded as property in which a blocked country or national thereof has an interest and no payment, transfer, or withdrawal or other dealing with respect to such property shall be effected under, or be deemed to be authorized by, this paragraph. * * * (g) Effective date. The effective date of this general license shall be * * * December 31, 1946, as to Germany * * *" (12 Fed.Reg. 1457).

to his heirs. An administrator, if one is appointed, may not collect the rents coming from the real estate without authority of the court. If he does so, he acts as agent of the heirs. Wolfe v. Lewisburg T & S D Co., 305 Pa. 583, 588, 158 A. 567, 81 A.L.R. 660; Overbrook Heights B & L Ass'n. v. Wilson, 333 Pa. 449, 454, 5 A.2d 529. Although the title to personal property does not vest in the heirs until distribution is made by the administrator after all debts of the estate are paid, all the rights and interests thereto·are fixed at the instant of death of the intestate. Brothers Estate, 156 Pa.Super. 292, 294, 295, 40 A.2d 156.

■ Article IV of the treaty [11] of October 14, 1925, between the United States and Germany permitted Weller to inherit that portion of the estate involving real property. This article, with respect to such inheritance, has not been suspended or abrogated. Clark v. Allen, 331 U.S. 503, 510, 67 S.Ct. 1431, 91 L.Ed. 1633, 170 A.L.R. 953. The law [12] of Pennsylvania permitted him to inherit the personal property. See Stapay's Estate, 1928, 12 Pa.D. & C. 16. Therefore in the instant case it becomes immaterial whether the estate consisted of real or personal property or mixed; for as of the death of the decedent, Weller had an interest in it. The decedent having died prior to the effective date of License No. 94, as amended, the plaintiff may not claim any benefit thereunder.

■ Plaintiff claims, though inconsistent with his former contention, that the transactions in question were exempted from the Treasury's general rulings by section 1 of Public Circular No.34 [13], effective January 2, 1947. The basis for this claim is that the communications between the plaintiff and the attorney in France were for the purpose of ascertaining facts. This may have been true of the communications lead-

ing up to the documents which purported to grant a power of attorney and transfer an interest in property. Clearly the latter were not limited to the conditions in the proviso of Public Circular No. 34.

■ Relying on what we prefer to call dictum in Josephberg v. Markham, 2 Cir., 152 F.2d 644, 648, the plaintiff asserts that the defendant's order vesting Weller's interest in the estate may be set aside because such property was within the control of the Orphans' Court and was, therefore, "insulated" from any possible use by the enemy. Whether or not the property in question was so insulated is immaterial. The vesting of such property is entirely within the discretion of the Alien Property Custodian or his successor. Clark v. Allen, Supra, 331 U.S. page 511, 67 S.Ct. 1431, 91 L.Ed. 1633, 170 A.L.R. 953. The exercise of that discretion is not reviewable or subject to be set aside by any court.

In short, the plaintiff, unless he or Weller has obtained a license from the proper authority, can assert no claim under section 9(a) of the Act without at the same time showing that the asserted interest through which he claims was acquired contrary to Executive Order 8389, as amended, and the ruling and regulations made under its authority.

■ In the alternative the plaintiff asserts that to the extent of the costs and reasonable value of his services, a portion of the estate never passed to Weller. This assertion is made on the theory that the plaintiff, as an attorney, having by his efforts primarily aided in uncovering Weller's interest in the estate, is the equitable owner thereof. A Pennsylvania Supreme Court decision appears to support this theory. See McKelvey's and Sterrett's Appeals, 1885, 108 Pa. 615, 620. A more recent decision, in modifying the rule set

---

[11] Treaty of Friendship, Commerce & Consular Rights with Germany, signed December 8, 1923, and proclaimed October 14, 1925, 44 Stat. 2132.

[12] Act of February 23, 1791, 3 Sm.L. 4, Section 2, 68 P.S. § 23.

[13] Section 1 of this circular, 12 Fed. Reg. 43, stated: (1) There are hereby exempted from the provisions of General Ruling No. 11: (a) Any communication of a financial, commercial or business character with any person within Germany or Japan; (b) Any act involving any such communication; and (c) Any Act for the benefit or on behalf of any person within Germany or Japan; Provided That any such communication or act is limited to the ascertainment of facts or the exchange of information. * * *.

forth in the above case, merely gives the attorney a charging lien which entitles him to priority of payment for his costs and services out of the fund discovered or created primarily by his efforts. Harris' Appeal, 1936, 323 Pa. 124, 138, 186 A. 92. However we need not determine in this action whether or not the plaintiff has a charging lien on the property vested in the defendant. Such a lien is given an attorney as protection for the payment of money, or a debt, for services rendered by him. Enforcement of a debt claim against property in which a national of Germany, as in this case, has an interest, which existed in him after June 13, 1941 and prior to January 1, 1947, must be brought in conformity with section 34 of the Act. This section provides that debt claims must be presented to the Alien Property Custodian with the right of judicial review in the District Court for the District of Columbia. This procedure, by subdivision (i) of section 34, is made the sole remedy available to debt claimants. Cabell v. Clark, 2 Cir., 162 F.2d 153; Alley v. Clark, D.C.E.D.N.Y., 71 F.Supp. 521.

For the reasons stated the motion to dismiss the complaint is allowed.