In re Jeffrey SANDERS, Trustee for Pentecostal Temple n/k/a Grace Community Temple, Debtor.

Christine SHUBERT, Trustee, Plaintiff,

v.

Jeffrey SANDERS, Defendant.

**Bankruptcy No. 87–03375S.**
**Adv. No. 88–0626S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 14, 1988.

Christine Shubert, Camden, N.J., interim trustee.

Harold N. Kaplan, Cherry Hill, N.J., for trustee.

Johnny Ray Brown, Philadelphia, Pa., for debtor and defendant.

James J. O'Connell, Ass't. U.S. Trustee, Philadelphia, Pa.

Jeffrey D. Sanders, Philadelphia, Pa., pro se.

**318**

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

This most unusual Chapter 7 bankruptcy filing and an adversary proceeding filed therein by the Trustee causes us to explore the issue of who the intended debtor in this case is and whether the intended debtor can in fact be a debtor in the configuration which he has chosen. We conclude, in light of the Debtor's explanatory Brief in this adversary proceeding, that the intended debtor is not the individual designated in the caption as "Trustee" of a church, but the church itself. We also conclude that this case can be properly maintained for the church by an individual designated as "Trustee." However, we also believe that this designation was not well-chosen, because it has apparently caused the Debtor's counsel to confuse the duties and responsibilities of the Chapter 7 Trustee appointed in the case under the Bankruptcy Code with those of the individual designated as "Trustee." As a result, we hold that the individual designated as "Trustee" owes $500.00 in rentals to the actual Debtor, i.e., the church, and may be liable for additional sums appropriated in his misdirected efforts at "administering" the case. However, we are compelled to defer disposition of any such liabilities pending legitimate administration of this case.

On July 6, 1987, the Debtor filed this voluntary case, captioned "Jeffrey D. Sanders, Trustee for Pentecostal Temple, now known as Grace Community Temple." An address of 4650 Edmund Street, Philadelphia, Pennsylvania 19124, was recited for the Debtor. The only activities in this case during its initial year of existence were as follows: (1) An unopposed motion for relief from the automatic stay was successfully filed by the mortgagee of the Edmund Street property; (2) A motion to dismiss this case was filed by the Philadelphia Missionary and Church Extension Society of the Eastern Pennsylvania Conference of the United Methodist Church (hereinafter referred to as "the Methodist Church") on the ground that neither schedules, a statement of affairs, nor a master list of credi-

tors (matrix) had been filed by the Debtor. On February 18, 1988, the hearing date of the Methodist Church's motion, we denied same when schedules and a statement were filed that morning by the Debtor's counsel; and (3) The appointment of Christine Shubert, Esquire, as Interim Trustee of the Debtor's estate by the United States Trustee, (hereinafter "The Trustee") pursuant to 11 U.S.C. § 701(a)(1), on March 1, 1988.

The Statement of Financial Affairs for Debtor Engaged in Business, as filed on February 18, 1988, recites a business location of a church and parsonage at 4581 Torresdale Avenue, Philadelphia, Pennsylvania 19124. Almost every other question in the Statement is answered "Unknown." The only property listed on the Schedules is realty at the Torresdale Avenue address which includes, apparently, an adjoining parsonage, the address of which is 2046 Orthodox Street, Philadelphia, Pennsylvania 19124. The debts listed include a debt to the Methodist Church secured by a mortgage and about eighty (80) unsecured debts which appear to be congruent to a supplemental listing of "Church Bills," all of which are noted as "Disputed." Attached at the end of the papers is what purports to be a resolution by the sole member of the Board of Directors of the Grace Community Temple, i.e., Jeffrey D. Sanders (hereinafter "Sanders"), dated July 6, 1987, authorizing it to file the bankruptcy. The papers therefore give all indicia of listing *church* assets and liabilities, rather than *individual* assets of Sanders like, apparently, the Edmund Street property.

Unfortunately, no matrix was ever filed. This prevented the scheduling of a creditors' meeting pursuant to 11 U.S.C. § 341 in the case, which might have reduced the confusion enshrouding this matter since its inception.

On May 16, 1988, the Trustee filed the Complaint in the instant adversary proceeding against Sanders, apparently in his individual capacity, seeking to compel him to pay rent for residing in the parsonage on Orthodox Street and demanding that he turn over certain property of, apparently, the church. An Answer was filed for Sand-

ers, by the same counsel as is representing the Debtor, admitting that Sanders lived in the parsonage for three (3) months and denying all other asserted liabilities. The first listing for trial, on June 29, 1988, was continued until August 3, 1988. On that date, defense counsel requested a further continuance, alleging that, after Sanders moved from the parsonage, he had moved about to various addresses, impeding communications and resulting in his absence. However, since it was noted that Sanders was present in court when we continued the hearing to this date, we denied this request.

The Trustee called the Reverend Mary Dorin and her husband Anthony as his sole witnesses. Rev. Dorin identified herself as pastor of the Saints Delight Pentecostal Church. Her husband testified that, in early November, 1987, he observed a newspaper advertisement regarding a sale of church articles. In response, the Dorins went to the church premises on Torresdale Avenue and met there with Sanders, who was conducting what might be termed an indoor garage sale of religious artifacts.

After purchasing some small items during their first encounter with Sanders on November 6, 1987, the Dorins thereafter placed a deposit on a pulpit, cross, and "three-piece chair" (hereinafter "the pulpit set") priced at $1,500.00. Ultimately, in December, 1987, they also negotiated a lease to use the church premises for rental of $1,000.00 monthly. An opening service in mid-January, 1988, was planned.

This escalation of amicable dealings between Sanders and the Dorins came to an abrupt halt in January, 1988, when the pulpit set suddenly disappeared from the church. At first the Dorins believed that the pulpit set was stolen, but, ultimately, Sanders admitted that he had sold it to another minister. Sanders ultimately returned $2,350.00 in payments remitted to him by the Dorins and attempted to terminate the lease, retaining $2,000.00 as rent-

als for the church over the period through the end of February, 1988, that the Dorins had used it. The Dorins have continued to use the church thereafter, but have remitted the rents to the Trustee at her insistence instead of to Sanders.

Sanders' counsel presented no evidence at the August 3, 1988, hearing. He stipulated that Sanders had resided in the parsonage for three months and that $500.00 monthly was the fair rental value of the premises for the entire period. He attempted to argue that the refund of $2,350.00 to the Dorins had made them whole, and that therefore the Trustee had no cause of action against Sanders. However, he also offered no denial that Sanders had sold the church's property, nor did defense counsel contend that any sort of court permission to sell the church's property had been obtained or even sought before Sanders did so.

At the close of the hearing, we expressed our frank puzzlement at not only precisely what relief was sought in the adversary proceeding, but also of the nature of the entire underlying bankruptcy case. The papers were ambiguous in describing even such a basic concept as who the debtor actually was—Sanders individually or the church. The questions of whether the church could be a debtor and what the significance of Sanders' designation in the papers as a "Trustee" of the church arose in our mind. We felt that resolutions of these questions were crucial to determining just what relief we possibly could grant to the Trustee in this proceeding. For example, we pointed out that, if Sanders *individually* were the Debtor, then no claim of rent for his residing in his own premises would have appeared appropriate. It was also unclear who owned the religious artifacts which Sanders had apparently sold, especially since they were clearly not listed at all in the schedules, even though they certainly appeared to have some relationship to the church.[1] We therefore entered

---

1. This appears to have been because they had all been sold by the time that the Schedules were finally filed on February 18, 1988. However, the Schedules clearly *should* have disclosed

property of the Debtor's estate as of the date of filing on July 6, 1987. *See* 11 U.S.C. § 541(a)(1) (property interests held by a debtor as of the commencement of the case are property of the

an Order of August 4, 1988, requesting counsel for the Trustee and the Debtor to submit Briefs, on or before August 15, 1988, and August 26, 1988, respectively, addressing what entity should be considered as the debtor in this case and to what relief the Trustee was entitled on behalf of whoever or whatever the debtor was. After a week's delay on the part of Sanders' counsel, the Briefs were submitted.

The Trustee, in her Brief, allowed that either Sanders individually or the church could be the debtor. She conceded that the rental claim was only viable if the church was the debtor. She further contended, apparently on the basis of the credible, but rather vague, testimony of the Dorins that the religious artifacts which they saw on sale were worth "approximately $3,000.00 to $5,000.00," that Sanders had removed items valued at this amount, and consequently, a judgment in this additional amount should be entered against Sanders.

In a responsive Brief, defense counsel clearly contended that the church was the intended debtor, and devoted much of the remainder of the Brief to attacks upon the Trustee. Some representative excerpts from the Defendant's Brief pursuant to Court's Order of August 4, 1988, appearing at pages 1–2, 4 and 5, are the following:

> ... the Trustee subsequently authorized said tenants [the Dorins] to remain on premises over the objections of Mr. Sanders and Trustees [sic] for the Church and counsel even though there was a perspective [sic] buyer interested in purchasing the property and taking immediate tenancy.

> .     .     .     .     .

> ... Arguably, Mr. Sanders [sic] sale of the Church property and even temporarily residing on Church property could be a legitimate means to the collection of his

salary. In which case [sic], the Trustee in bankruptcy is entitled to nothing additional.

.     .     .     .     .

The Trustee's position has been one of total disregard for the welfare of the Church entity.

.     .     .     .     .

The Trustee turned the second issue inside out in its Brief. The issue was not "What relief is the Trustee entitled to, if any," it was "What relief is Jeffrey Sanders entitled to, if any".[2]

If the welfare of the Church is disregarded, for whose benefit was the petition filed [sic].

The Church is the person for whom the petition was filed. Jeffrey Sanders is the Trustee. If Mr. Sanders had handled [sic] his duty as Trustee, Church [sic] should have an opportunity to appoint another Trustee. [?]

Finally, we should mention that, on September 6, 1988, the case was listed for dismissal because the matrix had still never been filed. Prognosticating that neither the Trustee nor Sanders desire dismissal of this case at this time, we direct the Clerk to type up the matrix and schedule a § 341 meeting for October 17, 1988, as a means of pointing the case towards proper administration, in our accompanying Order.

We initially address the issue of the identity of the debtor in this proceeding. Both the Trustee and defense counsel appear to agree that the intended debtor is the church and that Sanders had filed this case solely in his capacity as "Trustee" of the church. Despite this agreement of the parties, a case can only assume a form consistent with that permissible under the Bankruptcy Code. Therefore, we must determine whether the agreed intended designation of the Debtor in this case is permissible under the Code.

estate); and 11 U.S.C. § 521(4) (debtor must surrender all property of the estate to the Trustee).

2. Defense counsel apparently read the phraseology "what relief, if any, is the Trustee entitled to on behalf of Mr. Sanders individually or the church" as indicating that we believed that

Sanders was entitled to relief. This is a most unlikely reading of our Order, since Sanders was the Defendant and did not file a counterclaim. Rather, we only meant that, as Trustee, the Trustee was entitled to relief "on behalf of" the estate of whoever the debtor was.

The first question raised by us is who should be considered the debtor in this proceeding, Sanders individually or the church of which he is self-proclaimed "Trustee." With only a few exceptions obviously not pertinent here, any "person" may be a debtor in a Chapter 7 case. 11 U.S.C. § 109(b). Sanders obviously is a "person." However, it is not so clear that the church is a "person" and whether Sanders may "represent" it in the capacity of a "Trustee."

The Code provides that the term " 'person' includes individual, partnership, and corporation, but does not include governmental unit, ..." 11 U.S.C. § 101(35). However, the term "corporation" is thus broadly defined, in 11 U.S.C. § 101(8):

"corporation"—

(A) includes—

(i) association having a power or privilege that a private corporation, but not an individual or a partnership, possesses;

(ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;

(iii) joint-stock company;

(iv) unincorporated company or association; or

(v) business trust; but

(B) does not include limited partnership;

The church would appear to fall within the definition of an "unincorporated ... association." Such an entity can be a debtor. *See In re Philadelphia Consistory Sublime Princes Royal Secret 32 Ancient Accepted Scottish Rite*, 40 F.Supp. 645 (E.D.Pa.1941). Other churches have filed bankruptcies in their own name, without dispute, apparently under this definition. *E.g., In re United Church of the Ministers of God*, 84 B.R. 50 (Bankr.E.D.Pa.1988); and 74 B.R. 271 (Bankr.E.D.Pa.1987); *In re Greater Pottstown Church of the Evangelical Congregational Church*, 80 B.R. 706 (Bankr.E.D.Pa.1987); and *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768 (Bankr.E.D.Pa.1984).

However, additional questions arise due to the fact that Sanders has designated himself as "Trustee" of the church. If he is in fact a trustee, then the church must be the res of the trust. Legislative history, if not the express words of the statute, indicate that "the definition [of "person"] does not include an estate or a *trust*" (emphasis added). H.REP. No. 595, 95th Cong., 1st Sess. 313 (1977); and S.REP. No. 989, 95th Cong., 2d Sess. 25 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5811, 6270. *See In re John M. Cahill, M.D. Associates Pension Plan*, 15 B.R. 639, 639–40 (Bankr.E.D.Pa.1981); and *In re Old Second National Bank of Aurora*, 7 B.R. 37, 37 (Bankr.N.D.Ill.1980). The only exception to the exclusion of a trust as a debtor, set forth in 11 U.S.C. § 101(8)(A)(v), is a "business trust." Many cases, construing § 101(8), have held that if and only if a trust is a "business trust" is it permitted to file bankruptcy. *Compare, e.g., In re Johnson*, 82 B.R. 618 (Bankr.S.D.Fla. 1988); *In re Walker*, 79 B.R. 59 (Bankr.M. D.Fla.1987); and *In re L & V Realty Trust*, 61 B.R. 423 (Bankr.D.Mass.1986) (entities which are not "business trusts" cannot be debtors); *with In re Arehart*, 52 B.R. 308 (Bankr.M.D.Fla.1985); and *In re Gonic Realty Trust*, 50 B.R. 710 (Bankr.D. N.H.1985) (entities which are "business trusts" can be debtors).

Here, of course, it is not the church itself which has filed bankruptcy, but Sanders as its "Trustee." This raises the issue of whether a person can be a debtor in the capacity as a trustee, as opposed to the capacity of an individual. This issue is implicitly addressed in *Old Second National Bank, supra*, where the court points out that the named debtor-bank "as a corporation is an eligible debtor, but ... as *trustee* is not an eligible debtor." 7 B.R. at 38.

A separate little line of local cases, concerning parents who owned their homes in trust for their children and attempted to save their homes by filing bankruptcy, is relevant to this issue. *Federal Home Loan Mortgage Corp. v. Wynn*, 29 B.R. 679 (Bankr.D.N.J.1983); *In re Foster*, 19 B.R. 28 (Bankr.E.D.Pa.1982); and *In re Kirby*, 9 B.R. 901 (Bankr.E.D.Pa.1981). In *Kirby*, the debtor filed her petition individually, but amended it to include the desig-

nation "a/k/a ... Trustee." *Id.* at 902. In *Foster*, the debtor filed the petition in both her name individually and as trustee. 19 B.R. at 29. In *Wynn*, the debtor filed two petitions, one as an individual and one as trustee. 29 B.R. at 679.

In *Kirby*, the court dismissed the case as to the debtor as trustee under 11 U.S.C. § 109(e) because it found that she had no income in that capacity. However, in so doing, the court noted that "we cannot categorically state that one who acts as a trustee or in any other fiduciary capacity may never file a petition under Chapter 13, ..." 9 B.R. at 903. *Foster* is more positive, holding that there is no authority for the statement that a trustee cannot seek relief under Title 11. 19 B.R. at 30. *Wynn* is even more positive, holding that the language of *Kirby* is "too restrictive given the broad statutory language and analysis in the legislative history" and that, "since the Code allows a trust or a trustee to commence a case, an individual who is also a trustee must be allowed to file a Chapter 13 Petition." 29 B.R. at 681.

■ This latter statement seems, in turn, too broad. Only certain trusts are allowed to file a bankruptcy petition, as the cases cited at page 321 *supra* indicate. We believe the correct rule is that, if a trust is eligible to be a debtor, then an individual may file a bankruptcy as a trustee on behalf of it. This is the express holding of *Old Second National Bank, supra,* 7 B.R. at 38, and it is the implicit holding of *Johnson, Walker,* and *Arehart, supra,* where individuals named as trustees were permitted (*Arehart*) or not permitted (*Johnson* and *Walker*) to file bankruptcies on the basis of whether the entity of which they were the trustee was a "business trust" or not.

One other issue relevant to the disposition here and touched upon in *Old Second National Bank, Kirby, Foster, Wynn,* and *In re Colin,* 35 B.R. 904 (Bankr.S.D.N.Y. 1983), demands some attention. That is whether there is a distinction between a debtor's maintaining a case in the capacity as a trustee as opposed to the capacity of an individual. *Wynn,* which allowed the debtor to maintain a separate bankruptcy in both capacities, clearly held that such a distinction could be made. *Kirby,* allowing the debtor to maintain her case as an individual while dismissing the case under § 109(e) insofar as the debtor sought to maintain the case as a trustee, would appear to concur with *Wynn* on this point.

However, the court in *Colin,* ruling that the automatic stay arising from the debtor's bankruptcy applied to property that the debtor held in trust, cites *Foster* as support for the principle that a debtor who files a petition does so in every capacity, as an individual as well as a trustee, and is not subjected to "the 'enforced schizophrenia' of the debtor into fragmented personalities." 35 B.R. at 908. *Foster* does include similar language, but, like *Colin,* only in the context of whether the automatic stay applies to property held by the debtor as trustee as well as individually.

We do not think that the observation that the automatic stay applies to a debtor in every capacity is inconsistent with the notion that a person may maintain a bankruptcy in solely a representative capacity, as opposed to an individual capacity, if that person so desires. The debtors in *Colin* and *Foster* argued that they intended to and were entitled to maintain their respective bankruptcies in both capacities, as an individual and as a trustee. However, where the debtor specifically expresses a desire to maintain a bankruptcy strictly in the capacity of a trustee, we perceive nothing in those decisions that would suggest that a debtor should be prevented from doing so. *Kirby, Wynn, Old Second National Bank* and also *Arehart, supra,* all suggest that a debtor can, indeed, institute a bankruptcy case strictly in the capacity as a trustee, as long as the entity on whose behalf the action is maintained could be a debtor.

■ Applying the principles which we glean from the foregoing cases to the instant factual matrix brings us to the conclusion that Sanders is indeed empowered to maintain this case in the capacity as trustee of the church. The church could be a debtor itself, as an unincorporated associ-

ation, even though it is not a "business trust," because it does not appear to be in the category of what would normally be considered a trust at all. Sanders could have filed this action on behalf of the church, without naming himself as an individual at all. However, since his intention is obviously to file on behalf of the church, we shall allow him to do so.

■ Unfortunately, this conclusion is at best a mixed blessing for Sanders. If the church is the debtor, and not him individually, much of his post-petition activities on behalf of the church are unauthorized, illegal, and subject to remedies which may not prove very pleasant to Sanders.

Regrettably, the self-designation of Sanders as the church's "Trustee" seems to have caused Sanders and defense counsel, as indicated in the passages from his Brief quoted at pages 7–8 *supra*, to have concluded that Sanders is the "real" trustee, and the Trustee, though duly appointed under 11 U.S.C. §§ 701–04, is some sort of officious interloper. Clearly, neither Sanders nor anyone else can set himself up as a duly-appointed trustee under the Bankruptcy Code simply by *calling* himself a trustee. Although this point would seem self-evident, Sanders appears to contest it.

The interim trustee envisioned by 11 U.S.C. § 701(a) must be a "disinterested person" appointed from a panel of private trustees by the United States Trustee. The interim trustee remains in place unless creditors, which may not include any "insiders," elect a trustee to replace the interim selection. 11 U.S.C. § 702(a)(3). Sanders clearly is not on our panel of private Trustees, was not appointed by the United States Trustee, and is not "disinterested." *See* 11 U.S.C. § 101(13). He clearly is an "insider." *See* 11 U.S.C. § 101(30). Therefore, he could neither be a trustee of the debtor-church under the Bankruptcy Code, nor could he vote in any election to replace the current interim Trustee.

Clearly, it is the Trustee duly appointed pursuant to 11 U.S.C. §§ 701–04 who alone has the duty and right to collect and liquidate the property of the estate, *see* 11 U.S.C. §§ 521(4), 704(1), and she is alone empowered to "use, sell, or lease" property of the estate. 11 U.S.C. § 363(b).

It is equally clear that Sanders, and possibly defense counsel, have not grasped the force of this apparent truism. Thus, Sanders leased the estate's property to the Dorins and conducted a sale of the estate's assets, to the Dorins or others (or both in the case of the pulpit set) post-petition. More than being merely bothersome, these actions of Sanders were illegal and may be voidable by the Trustee or other interested parties. *See, e.g., Ray v. Norseworthy*, 90 U.S. (23 Wall.) 128, 135–37, 23 L.Ed. 116 (1874); *In re First Baptist Church, Inc.*, 564 F.2d 677, 679 (5th Cir.1977); *In re Stanley Engineering Corp.*, 164 F.2d 316, 318–19 (3d Cir.1947), *cert. denied*, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 417 (1948); *In re Fernwood Markets*, 73 B.R. 616, 619–21 (Bankr.E.D.Pa.1987); and *Foster, supra*, 19 B.R. at 29. *Cf. In re Shaffer Furniture Co.*, 68 B.R. 827, 830–31 (Bankr.E.D. Pa.1987) (court strongly disapproves Debtor's having conducted a post-petition "bankruptcy sale" of inventory of a debtor-furniture store without prior court approval). If Sanders has not already dissipated much of the estate's assets in this manner, it is clear that Sanders and defense counsel must cease and desist from doing so under penalty of civil and criminal sanctions. An accounting of what has been sold will clearly be required in the course of proper administration of this case.

■ The statements by defense counsel in his Brief represent an almost remarkable misunderstanding of the bankruptcy process. Sanders is *not* a trustee under the Bankruptcy Code. He cannot expect compensation for officious actions which may have benefited only himself, to the detriment of the debtor-church. The Trustee must administer the estate for the benefit of all interested parties, including creditors, and not simply Sanders. Nor can Sanders simply call off the bankruptcy if this enlightenment of the course that this matter must take under the aegis of the Trustee is so different from the conception of him and his counsel that they conclude that the entire bankruptcy filing has been a mistake. Court approval, after a motion pur-

suant to 11 U.S.C. § 707(a), served on all interested parties, including the trustee, must precede the voluntary dismissal of a Chapter 7 case. *See In re Geller*, 74 B.R. 685, 689–90 (Bankr.E.D.Pa.1987).

Unfortunately, neither the Trustee's Complaint, not the piecemeal recitation of Sanders' activities from the limited perspective of the Dorins in this record supplies us with any comprehensive picture of Sanders' apparently grossly improper activities. This can occur only upon the Trustee's examination of Sanders, either at a § 341 meeting or an Examination pursuant to Bankruptcy Rule (hereinafter "B.Rule") 2004, in the course of her administration of this case in accordance with the Bankruptcy Code. We must, in fact, express some disappointment that the Trustee did not use these tools or a deposition pursuant to B.Rule 7030 and Federal Rule of Civil Procedure 30 *before* not only the trial of this proceeding, but also before the filing of this proceeding.

█ The only solid evidence of matters addressed by the Complaint involves the rent obligation of Sanders to the Debtor. Since the church is the actual Debtor, the stipulation that Sanders utilized the parsonage, having a fair rental value of $500.00 for three months, makes out an unrebutted *prima facie* case for the Trustee in support of an award of $500.00 against Sanders. However, the Trustee's other claims are, at this point, too vaguely supported to merit entry of any further judgment in her favor. We simply do not know (although we can guess, *see* page 319 n. 1 *supra*) whether Sanders or the church individually owned the religious artifacts which Sanders apparently sold. Nor do we have even more than a rough idea of the value of these items. On the other hand, Sanders should not be allowed to benefit from his wrongful actions by avoiding the processes of this court. We shall therefore dismiss all of the other claims of the Trustee against Sanders, but without prejudice.

An Order consistent with these conclusions will be entered.

### ORDER

AND NOW, this 14th day of September, 1988, after trial of this proceeding on August 3, 1988, and upon review of the Briefs submitted by counsel, it is hereby ORDERED as follows:

1. Judgment is entered in favor of the Plaintiff, CHRISTINE SHUBERT, TRUSTEE, and against the Defendant, JEFFREY SANDERS, in the amount of $500.00, for rent for use of property of the estate.

2. All other claims of the Plaintiff against the Defendant are DISMISSED without prejudice.

3. The Clerk shall forthwith prepare a master list of creditors, in lieu of the preparation of same by the Debtor, and notify all interested parties of the scheduling of the meeting of creditors, pursuant to 11 U.S.C. § 341, as set forth in paragraph four *infra*.

4. A meeting of creditors, pursuant to 11 U.S.C. § 341, shall be conducted by the Plaintiff–Trustee and attended by Sanders and his counsel, on penalty of contempt of court, at the following date, time, and place:

MONDAY, OCTOBER 17, 1988, at 9:30 A.M. at the Office of the Assistant United States Trustee, Room 209, 200 Chestnut Street, Philadelphia, PA 19106.