**In re Louise EVANS, Debtor.**

**Louise EVANS, Plaintiff,**

v.

**UNION MORTGAGE COMPANY, Defendant.**

**Bankruptcy No. 90–10545S.
Adv. No. 90–0078S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

May 31, 1990.

Gary E. Klein, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff-debtor.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

Wendell K. Grimes, Philadelphia, Pa., for defendant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The Plaintiff–Debtor beclouds the issues actually presented in this proceeding by arguing that her claim for statutory damages under the federal Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), arises from her status as a potential personal representative of her deceased alleged father, the obligor of a consumer financing contract. However, we conclude that we must determine this matter on the basis it is pleaded: as a claim of a non-party to a contract for TILA damages arising therefrom. Addressing the matter in its proper context, we easily conclude that the pleaded defense of lack of standing is meritorious and requires that the Complaint be dismissed.

The Debtor, LOUISE EVANS ("the Debtor"), filed a Chapter 13 bankruptcy case in this court on February 6, 1990. The instant adversary proceeding was filed by the Debtor on February 7, 1990, seeking statutory TILA damages arising from a Home Improvement Retail Installment Contract ("the Contract") of February 11, 1989, against UNION MORTGAGE COMPANY ("the Defendant"), just in time to avoid the running of the one-year statute of limitations pertinent to such actions. *See* 15 U.S.C. § 1640(e).

The Complaint avers that it is filed in the Debtor's individual capacity, alleging that

she "and her father, Lewis Cousins [sic],[1] entered into a consumer loan for home improvements with Acorn Plumbing and Heating Company, Inc. ("Acorn"), which was assigned by Acorn to the Defendant," in which "disclosures were made to [the Debtor] and Mr. Cousins [sic] pursuant to TILA" in violation of that statute.

The Defendant, in its Answer, denied that the Debtor was Cousin's daughter; averred that she signed Cousin's name to the Contract pursuant to a power of attorney for Cousin; and alleged that the Debtor, as a non-party to the Contract, lacked standing to maintain this proceeding.

After one continuance, the matter came before us for trial on May 15, 1990. We denied the Defendant's request for a further continuance. The only witness at the trial was the Debtor. Although there may have been some dispute as to whether this matter is core and could be determined by us, *but see In re Windsor Communications Group, Inc.,* 67 B.R. 692 (Bankr.E.D. Pa.1986) (simple accounts receivable complaint arising pre-petition is core), the Defendant admitted the allegation in the Debtor's Complaint that the matter is core. Therefore, we deem the parties to have expressly consented to our hearing and determining this matter, even if it were deemed non-core. *See* 28 U.S.C. § 157(c)(2); Bankruptcy Rules ("B.Rules") 7008(a) and 7012(b); and *In re St. Mary Hospital,* 101 B.R. 451, 454, 457 (Bankr.E. D.Pa.1989).

The Debtor testified that she contacted Acorn to make repairs to a bathroom in the home she shared with Cousin, and that Acorn arranged for the work to be financed by the Defendant. She further related that, when the agent of Acorn appeared at her home to have the necessary papers signed, she was obliged to wake Cousin from a nap. She allegedly agreed to sign Cousin's name to the Contract because Cousin was sleepy and generally greatly weakened from diabetes, hypertension, and amputation of both of his legs at the knees. Since the home in issue had been owned by Cousin and his late wife, and he thus had legal title to the property, it was necessary that the Contract be written in Cousin's name. A mortgage was also executed for Cousin by the Debtor, in which she designates her signature as executed by "Louise Evans P.O.A."

At some point after the contracts were signed, Acorn commenced work. However, payments were stopped under the Contract and the work remains unfinished to this day.

On July 3, 1989, Cousin died. He purportedly executed a will dated June 6, 1989, by which he devised the home to the Debtor for her "kindness and understanding," in that the Debtor had lived with and taken care of Cousin since 1983. The Debtor further testified that she had not probated the will nor filed for authority to administer the estate because she lacked the money to do so.

The Defendant questioned whether the Debtor was actually Cousin's daughter, producing a birth certificate which did not name either of the Debtor's parents, but did identify her as "Louise Cousin" at birth. The Defendant also produced a Power of Attorney, presumably referenced by the "P.O.A." designation on the mortgage, dated February 20, 1988, which bears a distinctively shaky signature of Cousin's name. The purported will, meanwhile, written less than a month before Cousin's death, bears Cousin's purported signatur in a firm and completely different hand than the Power of Attorney, although it also bears the signatures of two witnesses. The Debtor also testified that Cousin was survived by four other children, the Debtor's brother and three sisters.

We conclude from the foregoing that the Debtor is probably Cousin's daughter. However, we have considerable doubt that Cousin executed the purported will of June 6, 1989, despite the signatures of the witnesses. This doubt raises a serious question in our mind about the manner in which

---

**1.** A careful review of the pertinent documents indicates that the correct name of the Debtor's alleged father is "Lewis Cousin," although he is named as "Louis Cousins" on the Contract and on several other documents. We will refer to him hereinafter as "Cousin."

Cousin's estate would be administered and reflects adversely upon the Debtor's general credibility, since she is a firm proponent of this purported will.

After the trial, we allowed the parties until May 25, 1990, to simultaneously submit Briefs. Only the Debtor accepted our invitation. In her Brief, the Debtor asserts that, as the prospective personal representative of Cousin's estate, she was "the real party-in-interest" in this action. Further, she asserts that the Defendant's failure to challenge her status as real party in interest, as opposed to its confusion in challenging her standing, waives this defense. Finally, she contends that Federal Rule of Civil Procedure ("F.R.Civ.P.") 17(a), applicable to this proceeding through B.Rule 7017, allows her to accomplish and ratify her incomplete appointment as personal representative hereafter and therefore that, if this court is troubled by her present failure to obtain appointment as Cousin's personal representative, we should stay this proceeding to allow her to do so as opposed to dismissing the proceeding, which would result in a bar of a subsequent proceeding by effect of 15 U.S.C. § 1640(e).

We believe that it is the Debtor, not the Defendant, who is confused about the status of the pleadings in this proceeding. The Complaint does *not* allege a cause of action of the Debtor as Cousin's personal representative, but rather states a cause of action of the Debtor in her own right, as a party to the Contract.

 The Debtor's signature to the Contract is purely in the capacity of an agent for Cousin. Although his name thereon is misspelled as "Louis Cousins," Cousin is the only party named as "Buyer" in the printed portion of the Contract. The Debtor did not sign her own name, but rather signed only Cousin's name, obviously on his behalf. Therefore, it is Cousin and not the Debtor who is sole buyer and obligor on the Contract. *See, e.g., Geyer v. Huntingdon County Agricultural Ass'n,* 362 Pa. 74, 77–78, 66 A.2d 249, 250–51 (1949); *Abrams v. Musgrove,* 12 Pa. 292, 295 (1849); 1 RESTATEMENT (SECOND) OF AGENCY ("Restatement"), 155, at 371 (1958); 2 Restatement, *supra,* § 372(2) and comment *d* thereto, at 158, 161.

Since the Debtor is not a party to the Contract, she has no standing to enforce rights under it, at least in her own capacity. *See Chevalier v. Baird Savings Ass'n,* 66 F.R.D. 105, 108–09 (E.D.Pa.1975); *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684, 690–92 (E.D.Pa.1973). *Cf.* 2 Restatement, *supra,* 372(2), at 158. A claim in her own capacity is all that she has pleaded. Given this pleading, the Defendant correctly identified the issue as one of standing and properly raised same in its Answer. Moreover, the Defendant is clearly entitled to prevail on the ground that indeed the Debtor lacks standing to maintain this action on her own behalf.

The Debtor has not sought to amend her pleadings to conform same to the theory that she has standing to maintain this action as the personal representative of Cousin, nor did she orally move to do so at trial. Moreover, had she done so, it would have been in order to allow the Defendant to meet the new theory presented with supplemental pleading. *See* 3 J. MOORE, FEDERAL PRACTICE, ¶ 15.14, at 15–138 (2d ed. 1989). It is certainly not fair to suggest, as does the Debtor, that the Defendant should have pleaded a response to a theory of liability not articulated in the Complaint.

 However, even if we allowed the Debtor to amend her pleadings to state her claim in the capacity of Cousin's representative, we would nevertheless find her theories supporting a recovery to be most doubtful. We agree that a party who has been designated, under the terms of applicable state law, as the personal representative of an obligor in a consumer financing contract can maintain an action for statutory damages on behalf of the decedent-obligor's estate. *See Smith v. Fidelity Consumer Discount Co.,* 898 F.2d 896, 902–03 (3d Cir.1990) (by implication); *James v. Home Construction Co.,* 621 F.2d 727, 729–30 (5th Cir.1980); *Smith v. No. 2 Galesburg Crown Finance Co.,* 615 F.2d 407, 413–15 (7th Cir.1980); *Pearson v. Colonial*

*Financial Services, Inc.,* 526 F.Supp. 470, 473 (M.D.Ala.1981); *Perry v. Beneficial Finance Co.,* 88 F.R.D. 221, 222–23 (W.D. N.Y.1980); *In re Gadson,* Bankr. No. 88–14088F, slip op. at 7–9 (Bankr.E.D.Pa. Jan. 12, 1990); and *In re Lopez,* 75 B.R. 961, 965 (Bankr.E.D.Pa.1987), *aff'd,* 82 B.R. 712 (E.D.Pa.1988).

However, unless and until a party-plaintiff actually *is* appointed as the representative of the estate, it seems clear that the said party cannot maintain an action on behalf of the decedent-obligor's estate. *See Perry, supra,* 88 F.R.D. at 223 (wives of decedents who had not clarified their legal capacity to bring suit could not validly act for decedent-obligors); *Gadson, supra,* slip op. at 10–11 (if and only if debtor is appointed as decedent-obligor's personal representative can she assert a TILA recoupment claim on behalf of decedent-obligor); and *Lopez, supra,* 75 B.R. at 965 (debtor who is not the personal representative of decedent-obligor and whose relationship to the decedent-obligor is unclear cannot seek TILA recoupment).

The Debtor argues that we should not dismiss this action at this juncture, but should preserve her claim on behalf of the estate from a limitations defense by staying the proceeding until a personal representative (presumably she) is appointed. *See* F.R.Civ.P. 17(a); *Pflugh v. United States,* 124 F.Supp. 607, 608 (W.D.Pa.1954); and *Bolitho v. Buch Exp., Inc.,* 14 F.R.D. 245, 246 (E.D.Pa.1952). There are two reasons why we decline this invitation. Firstly, as we explained at pages 437–38 *supra,* the proceeding was not initiated nor amended to state a cause of action on behalf of the Debtor as the personal representative of Cousin's estate.

Secondly, and more importantly, there is considerable doubt in our mind as to whether the Debtor will or should be appointed as Cousin's personal representative. We question whether the purported will presented to us by the Debtor is valid. Therefore, we are not sure whether the decedent's estate will be administered as an intestate estate or not. The Debtor's emphasis on the validity of this most doubtful will causes us to question whether she would be an appropriate personal representative of the decedent. Certainly, this is not a situation like those in *Pflugh* and *Bolitho* where the identity of the ultimate appointee as the decedent's personal representative is clear and the appointment was subsequently accomplished. Here, we doubt that such appointment will ever be accomplished. We think that it is unlikely that the purported will of June 6, 1989, can withstand probate. The interests of Cousin's personal representative, in intestacy, particularly since the Debtor would apparently have no greater than a one-fifth share with the other heirs, may be quite distinct from that of the Debtor, who seeks to capitalize on an actionable but trivial TILA violation in the Contract.[2] It is not inconceivable that the Debtor could be proven not to be Cousin's daughter, and not entitled to any distribution in intestacy. In that event, the personal representative would surely not choose to pursue this proceeding.

Without predicting the outcome of the purely state-law function of administration of Cousin's state, we can only conclude that the outcome is too uncertain to allow us to make the assumptions which the Debtor would ask us to make to justify our staying dismissal of this proceeding.

We will therefore proceed to enter judgment in this proceeding in favor of the Defendant.

---

**2.** The only TILA violation articulated is a failure of the Contract to recite the due dates of the payments, in partial violation of 15 U.S.C. § 1638(a)(6), which does give rise to statutory damages. 15 U.S.C. § 1640(a)(3).