**In re Louise EVANS, Debtor.**

**Louise EVANS, Individually and as Trustee for the Estate of Lewis Cousin and Edward Sparkman, Esquire, Plaintiffs,**

v.

**UNION MORTGAGE COMPANY, Defendant.**

**Bankruptcy No. 90–10543S.**
**Adv. No. 90–0704S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 24, 1990.

818

Gary E. Klein, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff-debtor.

Edward Sparkman, Philadelphia, Pa., plaintiff-trustee.

Wendell K. Grimes, Philadelphia, Pa., for defendant.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

The instant adversary proceeding is a sequel to an earlier proceeding arising out of this same bankruptcy case and involving the same parties. The decision of May 31, 1990, dismissing the earlier proceeding is reported at 114 B.R. 434 (cited herein as *"Evans I"*). In *Evans I*, we held that LOUISE EVANS, the Debtor in this individual Chapter 13 bankruptcy case commenced on February 6, 1990 ("the Debtor"), not being a party to a consumer credit contract of February 11, 1989 ("the Contract"), made by LEWIS COUSIN ("Cousin"), her late alleged father, with the assignee of the Defendant UNION MORTGAGE COMPANY ("the Defendant"), lacked standing to maintain an action claiming a violation of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. ("TILA").

Nevertheless, the Defendant, on August 2, 1990, planted the seed of this proceeding when it inexplicably filed a secured proof of claim in the Debtor's bankruptcy case based on rights arising from the Contract. The Debtor, on September 4, 1990, responded with the filing of the instant proceeding attacking the Defendant's proof of claim. The substantive basis of this suit is an attempt to enforce a purported rescission of the Contract effected by the Debtor on November 21, 1989.

The Debtor attempts to avoid the standing problem which befell her in the prior proceeding in two ways. Firstly, she has instituted this action, with the Chapter 13 Trustee, "individually and *as Trustee for the Estate*" (emphasis added) of Cousin. Secondly, she asserts that ¶ 226.23(a)2 of the Official Staff Commentary on Regulation Z Truth-in-Lending ("the Commentary") thusly eliminates the prerequisite that she be a party to the contract to maintain this action, the shortcoming which barred her right to relief in *Evans I*:

2. *Consumer.* To be a consumer within the meaning of section 226.2, that person *must at least have an ownership interest in the dwelling that is encumbered by the creditor's security interest, although that person need not be a signatory to the credit agreement.* For example, if only one spouse signs a credit contract, the other spouse is a consumer if the ownership interest of that spouse is subject to the security interest (emphasis added).

The Defendant, denying the Debtor's averments that she is the daughter of, and an heir to, Cousin, raises three affirmative defenses: (1) The Debtor's lack of standing to maintain this action; (2) The *res judicata* effect of the decision in *Evans I;* and (3) The Debtor's failure to join necessary parties, *i.e.*, the alleged other heirs of Cousin. *See Evans I*, 114 B.R. at 436 (Debtor testified that Cousin was survived by four other children).

On October 18, 1990, the Defendant, as in *Evans I, id.*, requested and was denied a continuance of the scheduled trial. The Debtor then placed into evidence, without objection, the proof of claim, the TILA disclosure statement provided to Cousin in the transaction, a letter from the Debtor's counsel to the Defendant demanding rescission of the Contract, and a pre-petition state-court mortgage foreclosure complaint naming Cousin and the Debtor, alleged to be "the only known heir of" Cousin, as a defendant. The Debtor then rested without adducing any testimony. The Defendant placed into the record only the *Evans I* Opinion and the Complaint and Answer in that action and also rested.

The court invited the parties to submit Memoranda of Law on or before October 19, 1990, and, as had transpired in the course of events in *Evans I*, 114 B.R. at 437, only the Debtor offered a submission. She addressed our skepticism that anyone other than an "obligor" to a consumer contract could assert the right to rescind under the TILA. Despite the apparent wording of 15 U.S.C. § 1635 so limiting the right to rescind to an "obligor" in a contract, we accept the applicable Commentary passage as authority to the contrary.

The Debtor also asserts that "[t]here is no real dispute here that the Debtor is an heir" to Cousin, citing the Defendant's allegation to this effect in the foreclosure complaint and the Defendant's filing of the proof of claim in her bankruptcy case as authority. In her Memorandum, she

presented authority for the principle that an heir of a decedent acquires an ownership interest in real property owned by the decedent immediately upon the decedent's death regardless of the existence or powers of a personal representative of the estate. *See Blank v. Clark*, 79 F.Supp. 373, 377 (E.D.Pa.1948); and *Quality Lumber & Millwork Co. v. Andrus*, 414 Pa. 411, 414–15, 200 A.2d 754, 746 (1964).[1] This assertion is necessary because, despite our holding that the appointment of a representative of Cousin's estate was a prerequisite to the maintenance of an action based on the Contract in *Evans I*, 114 B.R. at 437–38, the estate, as of the date of the instant trial, had still not been administered and no personal representative had been appointed. The Debtor's counsel attributed this state of affairs to the Debtor's desire not to take any action to disturb her uncontested possession of her residence in Cousin's home despite his apparent advice to the contrary.

*Evans I* bristles with our skepticism of the Debtor's credibility, particularly regarding the validity of Cousin's purported will. *See* 114 B.R. at 436–38. The Debtor's subsequent refusal to administer Cousin's estate and her unwillingness to present evidence to the court to attempt to alleviate our skepticism heightens our suspicions. Her counsel's explanation for the persistence of non-administration of Cousin's estate is also not consoling. This explanation suggests that the Debtor fears what might develop to her present residence in the home if Cousin's estate were properly administered. Therefore, despite the inconsistencies in the Defendant's conduct, which we will attempt to allay in our Order, we refuse to accommodate the Debtor by granting to her the relief which she seeks.

■ The starting point of our reasoning is that, as a party seeking to assert certain rights against the Defendant in this proceeding, the burden of proof is clearly upon the Debtor to both present admissible evi-

---

**1.** We note that the *Andrus* case limits its holding by noting that an heir's title is subject to the powers of the decedent's personal representative. 414 Pa. at 414–15, 200 A.2d at 756. Since

there is no personal representative here, the impact of this qualification on the facts here is unclear.

dence in support of her claim and to convince us that she is entitled to relief by a preponderance of all of the competent evidence produced. *See, e.g., Compagnie Des Bauxites de Guinee v. Insurance Co. of N. America*, 551 F.Supp. 1239, 1242–43 (W.D. Pa.1982); *In re Volpi; Volpi v. Volpi*, Bankr. No. 89–14612S, Adv. No. 89–1184S, slip op. at 9–10, 1990 WL 110904 (Bankr.E. D.Pa. August 2, 1990); *In re Fricker*, 116 B.R. 431, 437–38 (Bankr.E.D.Pa.1990); *In re Lewis*, 80 B.R. 39, 41 (Bankr.E.D.Pa. 1987); *In re Flick*, 14 B.R. 912, 914–15 (Bankr.E.D.Pa.1981); and *Se–Ling Hosiery, Inc. v. Margulies*, 364 Pa. 45, 48–51, 70 A.2d 854, 855–57 (1950).

The Debtor has produced some evidence tending to establish that she is the daughter of, and an heir to, Cousin. However, her refusal to administer his estate raises our suspicions that she is not really his heir at all, to the extent that we are now unwilling to find that she has met her burden of proof on this score. In the face of the constant direct denials of its truthfulness by the Defendant in this court, the Debtor has failed to present any evidence on this issue despite her apparent ready access to evidence relevant to this issue. We therefore refuse to find that she has sufficiently proven this alleged fact.

■ We expressly find that the elements necessary for the Debtor to assert judicial estoppel or estoppel by record against the Defendant in light of its alleged prior statements or pleadings inconsistent with its claim that the Debtor is not Cousin's rightful heir are absent. *See, e.g., Scarano v. Central R.R.*, 203 F.2d 510, 513 (3d Cir. 1953); and *Volpi, supra*, slip op. at 11–12. The Defendant's inconsistent statements were either equivocal or were made at a time before it had any opportunity for investigation. Furthermore, the Defendant did not actually "obtain relief" on the basis of these assertions.

■ Our finding that the Debtor has not proven that she is in fact Cousin's heir destroys a necessary link to the Debtor's establishing a claim of an ownership interest in her residence, which was indisputably owned by Cousin at his death. There-

fore, the Commentary passage quoted at pages 818–819 *supra* does not, by its terms, provide the Debtor the requisite standing to rescind the Contract, nor does it provide her with the requisite standing to sue on her own behalf for remedies arising from a right to rescind it. *See* R. ROHNER, THE LAW OF TRUTH IN LENDING, ¶ 8.03[1][d], at 8–32 n. 155 (1984) (a unity of consummated legal ownership and occupancy of residence is needed to invoke ¶ 226.23(a)2 of the Commentary).

The Debtor's attempt to assert rights against the Defendant as Cousin's "Trustee" is an unpersuasive alternative. As we held in *Evans I*, 114 B.R. at 438, only an official personal representative is entitled to act on behalf of a decedent's estate. Nowhere does the Debtor explain what she means by claiming a status as "Trustee" of Cousin's estate. Moreover, this assertion causes her to traverse the slippery slope of whether a party who initiates a bankruptcy on that party's own behalf can assert debtor-status for interests held in that party's capacity as a trustee. *See, e.g., In re Sanders*, 91 B.R. 317, 321–23 (Bankr.E.D. Pa.1988); *In re Foster*, 19 B.R. 28, 29–30 (Bankr.E.D.Pa.1982); and *In re Kirby*, 9 B.R. 901, 903 (Bankr.E.D.Pa.1981).

■ Therefore, we find that the Defendant's assertion that the Debtor lacks standing to maintain her proceeding has merit. However, we cannot allow the Defendant, on one hand, to assert a claim against the Debtor's estate arising from the Contract, and then, on the other, to contend that she lacks standing to contest the validity of specifics of that claim. Therefore, we will grant the relief which we deem appropriate—dismissal of this proceeding—only upon the express condition that the Defendant withdraw its proof of claim. The Defendant's counsel agreed to this resolution, explaining that he had no role in the preparation and filing of the proof of claim and considered its filing ill-advised.

The Defendant's other affirmative defenses bear at least brief discussion. It is unclear whether, in invoking the defense of *res judicata*, the Defendant means to ref-

erence "pure" *res judicata* (*i.e.*, claim preclusion) or collateral estoppel (*i.e.*, issue preclusion) as to the holding and findings in *Evans I* regarding the Debtor's lack of standing.

The Defendant would not be far off the mark in asserting "pure" *res judicata* to contend that the Debtor's claim is barred by the doctrine of merger. *See In re Laubach*, 77 B.R. 483, 485–89 (Bankr.E.D.Pa. 1987). The criteria for application of "pure" *res judicata* are

"(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."

*Id.* at 485, quoting *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir.1984). As the Debtor's attempted rescission of the Contract predated *Evans I*, it is difficult to understand why that claim was not raised in that earlier proceeding along with the Debtor's other TILA claims. However, in *Laubach*, on the basis of district court precedent established in *Aquino v. Public Finance Consumer Discount Co.*, 606 F.Supp. 504 (E.D.Pa.1986), we expressly stated that a TILA action challenging disclosure violations did not bar a later suit based on a TILA-engendered rescission. 77 B.R. at 489.

The assertion of collateral estoppel, which consists of the following elements, would also be non-frivolous:

" '(1) the issue sought to be precluded must be the same as that involved in the prior action: (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.' *Matter of Ross*, 602 F.2d 604, 606 [sic should be 608] (3d Cir.1979) *quoting Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir.1976)." *In re Gaebler*, . 88 B.R. 62, 65–66 (E.D.Pa.1988). *In re Bergman*, 103 B.R. 660, 663 (Bankr.E.D.Pa.1989).

*In re Glen*, 115 B.R. 837, 840 (Bankr.E.D. Pa.1990). However, the introduction of the Commentary which expressly broadens the scope of standing of resident owners of real estate where interests are affected by a consumer credit contract probably eliminates applicability of the first element, *i.e.*, that the issue must be the same as that of the earlier action from which issue preclusion is sought.

■ The Defendant's claim of failure to join necessary parties does, however, appear to have merit. In speaking of a multiparty post–1980 TILA amendment action in *In re Mosley*, 85 B.R. 942, 949 (Bankr.E.D. Pa.1988), we stated as follows:

A full recovery by one obligor would eliminate any future recovery by co-obligor(s). The obligee should therefore be able to demand that both obligors be joined in one proceeding in order that its rights, as to all obligors, can be decided once and for all.

As indicated in *Evans I*, 114 B.R. at 438, we have great concern about the impact that allowing the Debtor to proceed alone against the Defendant could have upon the rights and wishes of the alleged four other heirs of Cousin. Therefore, were we inclined to conclude that the Debtor has standing to maintain this proceeding, we would have required the joinder of those other heirs to allow it to go forward in any event.

However, our bottom line is that we refuse to find that the Debtor has standing to maintain this proceeding, as we concluded in *Evans I*. Therefore, assuming that the Defendant will proceed to withdraw its proof of claim against the Debtor as we provide in our Order, we will proceed to dismiss it.

### ORDER

AND NOW, this 24th day of October, 1990, upon recitation of a stipulated record by counsel for the parties in the above-entitled proceeding on October 18, 1990, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Defendant, UNION MORTGAGE COMPANY, and against Debtor–Plaintiff LOUISE EVANS and the Trustee–Plaintiff EDWARD SPARKMAN, ESQUIRE, on the

condition that, by a document filed and served upon all parties and the court in chambers on or before October 31, 1990, the Defendant withdraws its presently-filed Proof of Claim and refrains from filing any other claims in this bankruptcy case.

2. This proceeding shall remain open until October 31, 1990, at which time, if the condition set forth in paragraph one *supra* is satisfied, the instant Complaint will be DISMISSED.

3. The Debtor shall file any Amended Plan in her main case, in light of this ruling, on or before November 2, 1990.

4. A second continued Confirmation hearing and a continued hearing on the Trustee's motion to dismiss this case on the grounds of failure to make payments and infeasibility shall be held on

THURSDAY, NOVEMBER 15, 1990, at 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

5. No further continuances of these matters will be favored.